Todd M. Schneider (SBN 158253)
Joshua G. Konecky (SBN 182897)
Matthew S. Weiler (SBN 236052)
**SCHNEIDER WALLACE**
**COTTRELL KONECKY LLP**
2000 Powell Street, Suite 1400
Emeryville, CA 94608
Telephone: (415) 421-7100
tschneider@schneiderwallace.com
jkonekcy@schneiderwallace.com
mweiler@schneiderwallace.com

Peter B. Schneider (*pro hac vice* forthcoming)
Edward R. Batten (*pro hac vice* forthcoming)
Ryan R. Hicks (*pro hac vice* forthcoming)
3700 Buffalo Speedway, Suite 300
Houston, Texas 77098
Telephone: (713) 338-2560
Facsimile: (415) 421-7105
pschneider@schneiderwallace.com
ebatten@schneiderwallace.com
rhicks@schneiderwallace.com

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| O'BRIEN SALES AND MARKETING, INC., on behalf of itself and other similarly situated,<br><br>Plaintiff<br><br>v.<br><br>TRANSPORTATION INSURANCE COMPANY,<br><br>Defendant. | COMPLAINT FOR DECLARATORY JUDGMENT<br><br>CLASS ACTION |

**CLASS ACTION COMPLAINT**

Plaintiff O'Brien Sales and Marketing, Inc. ("Plaintiff"), individually and on behalf of the other members of the below-defined nationwide classes (collectively, the "Class"), brings this class action against Defendant Transportation Insurance Company ("Transportation").

## I. INTRODUCTION

1. COVID-19 has interrupted businesses nation-wide, causing itself, or though issuance of government orders, devastating losses to Plaintiff and other policyholders.

2. Defendant, Transportation Insurance Company, is obligated to cover Plaintiff's losses under the terms of the insurance contract it issued to Plaintiff, which is identical in all material respects to those policies issued to other Class Members.

3. Although COVID-19 is a caused by virulent virus strain, SARS-CoV-2, that is novel to humans, the damage it inflicts is the type of physical damage covered by "all risk" policies such as those issued by Transportation. The virus's inherent danger is its physical presence.

4. Plaintiff purchased insurance coverage from Defendant to protect against the risk of losses from the suspension of its businesses. Plaintiff purchased a "Special Property Coverage" insurance policy that included "Business Income" coverage that broadly covered risks due to closure, shut down, or slowdown of Plaintiff's business.

5. The policy also included "Extra Expense" coverage, that provides for additional costs and expenses that are necessary to continue operations after an interruption to business operations has occurred.

6. The Special Property Coverage Form also includes "Civil Authority" coverage, which applies when a civil authority such as the Governor of California or local authority takes action that prohibits physical access to covered businesses premises.

7. "Civil Authority" coverage is implicated by the COVID-19 epidemic because the virus was physically present at businesses and other public places near Plaintiff's and Class Members' businesses.

8. Plaintiff's business, and its premises, were physically damaged by the presence of the virus that causes COVID-19. Plaintiff's business was suspended by the presence of the virus and Plaintiff was required to take measures to prevent further interruption and damage.

9. Defendant has broadly refused to pay any amount of coverage for claims made under the Business Income, Extra Expense, or Civil Authority coverage. These refusals were not made on the basis of any of Plaintiff or Class Members' individual circumstances. On information and belief, the refusal to pay is uniform and is part of Defendant's business strategy.

10. Plaintiff and Class Members have tendered claims under the Business Income, Extra Expense, Civil Authority, and any and all other applicable coverage related to the virus that causes COVID-19, but Defendant has refused to pay.

**II.   JURISDICTION AND VENUE**

11. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332, because Defendant and at least one Class member are citizens of different states, and because the Class consists of at least 100 members and the amount in controversy exceeds $5,000,000 exclusive of interest and costs.

12. Venue is proper in this District under 28 U.S.C. § 1391, because Defendant conducts business in this District, Class Members are likely located in this District, and certain of the acts and conduct giving rise to the claims occurred within the District.

**III.   PARTIES**

13. Plaintiff O'Brien Sales & Marketing, Inc. is a marketing agency located in Newport Beach, California.

14. Defendant Transportation Insurance Company ("Transportation") is a corporation with its headquarters located at CNA 151 North Franklin Street, Chicago, Illinois 60606. Transportation is authorized to write, sell, and issue insurance policies providing property and business income coverage in California and throughout the United States.

## IV. FACTUAL ALLEGATIONS

15. Defendant issued Plaintiff Policy No. B 5094898147. On information and belief, this policy is similar in all material respects to policies issued to other Class Members.

16. Plaintiff's Policy contains coverage for Business Income, Extra Expense, and Civil Authority.

17. The "Covered Property" under Defendant's policy is located at 2901 West Pacific Coast Highway 235, Newport Beach, California 92663.

18. Defendant's policy contains a Special Property Coverage Form that is an "all risk" policy that covers all "direct physical loss or damage" to the Covered Property.

19. "All risk" policies cover all damage from all sources unless it is specifically excluded. There is no exclusion or limit for damages from viruses in the Policy.

### A. Business Income Coverage

20. With respect to Business Income, Transportation "will pay for the actual loss of Business Income you sustain due to the necessary 'suspension' of your 'operations' during the 'period of restoration.' The 'suspension' must be caused by direct physical loss of or damage to property at the described premises. The loss or damage must be caused by or result from a Covered Cause of Loss."

21. "Suspension" is defined in Transportation policies as "The partial or complete cessation of your business activities" or "That a part or all of the described premises is rendered untenantable"

22. "Period of restoration" "means the period of time that … [b]egins with the date of direct physical loss or other damage caused by or resulting from any Covered Cause of Loss at the described premises."

23. As alleged herein, "Business Income" is net income that Plaintiff would have earned or incurred, and continuing normal operating expenses incurred, including payroll. "Extra Expense" are costs that Plaintiff incurred during the "period of restoration" of the Covered Property that would not have been incurred if there had been no direct physical loss or damage to the Covered Property.

24. By the Business Income coverage, Defendant agreed to pay for Plaintiff's and Class Members' actual losses business income suffered during the suspension of Plaintiff's and Class Members' businesses. Coverage runs through the "Period of Restoration," which is ongoing due to direct physical loss from COVID-19.

25. Losses due to COVID-19 is a "Covered Loss" under the Policy.

**B.   Extra Expense Coverage**

26. Under Transportation policies "Extra Expense means reasonable and necessary expenses you incur during the 'period of restoration' that you would not have incurred if there had been no direct physical loss of or damage to property caused by or resulting from a Covered Cause of Loss."

27. Extra Expense coverage includes costs incurred to "[a]void or minimize the 'suspension' of business and to continue 'operations' at the described premises or at replacement premises or temporary locations, including relocation expenses and costs to equip and operate the replacement premises or temporary locations; or … [m]inimize the 'suspension' of business if you cannot continue 'operations.'"

28. Extra Expense also includes costs "to repair or replace the property, but only to the extent it reduces the amount of loss that otherwise would have been payable under … Business Income."

**C.   Civil Authority Coverage**

29. Civil Authority coverage under Transportation policies provides added Business Insurance and Extra Expense coverage when physical damage to nearby properties causes losses at Covered Property.

30. The policies allow Plaintiff and Class Members to "extend that insurance to apply to the actual loss of Business Income you sustain and reasonable and necessary Extra Expense you incur caused by action of civil authority that prohibits access to the described premises."

31. "The civil authority action must be due to direct physical loss of or damage to property at locations, other than described premises, caused by or resulting from a Covered Cause of Loss."

### D. COVID-19 Triggers Business Income, Extra Expense, and Civil Authority Coverage.

32. The presence of a virus is a physical interaction with property, making it dangerous and less valuable. This damage is direct, in that the presence of virus particles alone is enough to make the property dangerous and less valuable.

33. Persons infected with COVID-19 spread the virus through the release of virus particles in talking, breathing, coughing, and sneezing. A mere sneeze can spread millions[1] or even hundreds of millions[2] of virus particles. A little as a dozen particles can infect an adult.

34. SARS-CoV-2 can live for days on surfaces such as doorknobs, faucet handles, counters, desks, and carpeting.[3]

35. A study from an intensive care unit in a hospital suggests that SARS-CoV-2 can travel around four meters through the air.[4]

36. Insurance carriers know that viruses cause damage to property.

37. In July 2006 the Insurance Services Office ("ISO"), a leading insurance industry advisory and ratings company, issued a circular that "introduces [a] new endorsement . . . Exclusion Of Loss Due To Virus Or Bacteria, which states that there is no coverage for loss or damage caused by or resulting from any virus, bacterium or other microorganism that induces or is capable of inducing physical distress, illness or disease."

38. The July 2006 ISO circular explained "Disease-causing agents may render a product impure (change its quality or substance), or enable the spread of disease by their presence on interior

---

[1] https://www.texastribune.org/2020/04/02/texas-er-doctors-demand-rapid-testing-coronavirus/

[2] https://acis.cals.arizona.edu/community-ipm/home-and-school-ipm-newsletters/ipm-newsletter-view/ipm-newsletters/2020/03/30/people-unite-against-the-threat-of-covid-19

[3] https://www.nejm.org/doi/full/10.1056/NEJMc2004973

[4] https://wwwnc.cdc.gov/eid/article/26/7/20-0885_article

building surfaces or the surfaces of personal property. When disease-causing viral or bacterial contamination occurs, potential claims involve the cost of replacement of property (for example, the milk), cost of decontamination (for example, interior building surfaces), and business interruption (time element) losses."

39. The physical presence of COVID-19 caused "direct physical loss of or damage to" each "Covered Property" under the Policy, and the policies of the other Class members. COVID-19 damaged the "Covered Property" by requiring it to be shut down. It was necessary for Plaintiff to shut down business operations in the "Covered Property" due to the damage to its property and that of nearby property.

40. The "Civil Authority" provisions of the Policy have likewise been triggered here. The Governor of California has issued Executive Orders, including Executive Order N-33-20, that limit or reduce the normal business operations of businesses in Plaintiff's community. Governor Newsom's Proclamation of State of Emergency is authorized by Government Code Section 8625 which requires the Governor find the existence of the circumstances described in Government Code Section 8558(b). Those circumstances include "conditions of disaster or of extreme peril to the safety of persons and property" caused by conditions such as epidemics. Executive Order N-33-20, which ordered the closure of class members' businesses, is premised on a finding by the Governor of extreme peril to property as a result of the epidemic.

41. State and local government across the national have issued similar orders.

42. The orders issued by state and local governments limit and restrict business hours; require closure of certain businesses altogether; limit the number of guests that may be allowed inside a business premises at one time; and require distancing between patrons that imposes additional limits on business operations.

43. The premise of all these orders is that the virus that causes COVID-19 is physically present in proximity to Plaintiff's Covered Property. Due to the omnipresence of the virus, executive orders were issued due to the "community spread" of COVID-19. Community

1 spread was only possible because the virus that causes COVID-19 was physically present in public places and businesses in Newport Beach and across the nation.

44. Due to these executive orders, Plaintiff and Class Members could not access their businesses on Covered Property.

45. Plaintiff and Class Members lost Business Income and paid Extra Expense as a result of COVID-19.

46. Plaintiff submitted a claim to Defendant, but Defendant has denied Plaintiff's claim.

47. Defendant's denial of Plaintiff's claim is part of a common plan or business policy that applies to all Class Members. Defendant will not pay any claims related to COVID-19, regardless of the merits of these claims.

**V.    CLASS ACTION ALLEGATIONS**

48. Plaintiff brings this action pursuant to Rules 23(a), and 23(b)(1), 23(b)(2), 23(b)(3) and/or 23(c)(4), of the Federal Rules of Civil Procedure, individually and on behalf of all others similarly situated. Plaintiff seeks to represent the following classes of Transportation policyholders for purposes of obtaining declaratory judgement:

49. The "Business Income Class": All persons and entities with Business Income coverage under an insurance policy issued by Transportation that suffered an interruption of business due to COVID-19 at the premises covered by the business income coverage.

50. The "Extra Expense Class": All persons and entities with Extra Expense coverage under a policy issued by Transportation that paid or incurred costs in seeking to minimize the suspension of business in connection with COVID-19 at the premises covered by their Transportation property insurance policy.

51. The "Civil Authority Class": All persons and entities with Civil Authority coverage under a policy issued by Transportation that suffered loss of Business Income and/or Extra Expense caused by an order closing businesses and public spaces due to COVID-19.

-8-

52. Defendant and any of its members, affiliates, parents, subsidiaries, officers, directors, employees, successors, or assigns; governmental entities; and the Court staff assigned to this case and their immediate family members are excluded from each class.

53. Each of the Rule 23 requirements are satisfied here.

54. There is "numerosity" under Rule 23(a)(1) because Class Members are so numerous that joinder is impracticable. On information and belief Class Members consist of hundreds or more of persons and entities across the United States.

55. Class Members are ascertainable because they can be readily identified based on Defendant's records, including insurance policies issued by Defendant and electronic databases maintained by Defendant that identify Class Members by their names, policies, or other personally identifiable information, including their addresses and the Covered Property under their policies.

56. "Commonality" and "predominance" may be established under Rule 23(a)(2) and Rule 23(b)(3) because this action involves common issues of law and fact that determine coverage under the policies at issue here. Such questions include, but are not limited to:

- Whether Plaintiff and Class Members paid premiums in exchange for all-risk property policies containing Business Income, Extra Expense, and Civil Authority coverage;
- Whether Class Members suffered a covered loss based on the Business Income, Extra Expense, or Civil Authority coverage;
- Whether COVID-19 triggered a covered loss under the Business Income, Extra Expense, or Civil Authority coverage;
- Whether Defendant improperly denied claims for coverage under the Business Income, Extra Expense, or Civil Authority coverage based on the position these provisions do not cover COVID-19;
- Whether Defendant breached its obligations under insurance policies with Business Income, Extra Expense, or Civil Authority coverage by denying claims en masse;

- Whether Plaintiff and Class Members are entitled to a declaratory judgment that COVID triggers coverage under Business Income, Extra Expense, or Civil Authority coverage; and
- Whether Plaintiff and Class Members are entitled to attorneys' fees, court costs, and other costs incurred in prosecuting this class action litigation.

57. Plaintiff's claims are typical of other Class Members' claims for purposes of Rule 23(a)(3) because, on information and belief, Defendant has issued blanked denials of coverage based on a uniform policy to not pay out claims for COVID-19 related claims for Business Income, Extra Expense, or Civil Authority coverage. Plaintiff's injuries, like those of other Class Members, are caused directly by these denials of coverage.

58. Plaintiff is an adequate class member under Rule 23(a)(4) because Plaintiff's interests are aligned with those of other Class Members. Plaintiff has retained counsel experienced in class action litigation, and insurance recovery. Plaintiff is willing, ready, and able to prosecute this action against Defendant on behalf of other policyholders.

59. For purposes of Rule 23(b)(1) and Rule 23(b)(3), maintaining a class action is superior to individual litigation of Business Income, Extra Expense, or Civil Authority coverage because of the inherent risk of inconsistent results on common factual and legal issues that arise from common facts. These coverage issues and Defendant's position with respect to COVID-19 should be determined on a representative basis to achieve efficiency and finality. Individual litigation will only result in delay and differing legal standards applying to the same challenged conduct.

60. For purposes of Rule 23(b)(2), Defendant's actions are equally applicable to Plaintiff and Class Members such that the wrongdoing may be addressed by declaratory relief, including a declaratory judgment concerning coverage under Business Income, Extra Expense, or Civil Authority coverage relating to COVID-19.

## VI. LEGAL CLAIMS

## COUNT I

## DECLARATORY JUDGMENT

**(On Behalf of the Business Income Class)**

61. Plaintiff incorporates and re-alleges the allegations set forth above.

62. Plaintiff and Class Members paid premiums in exchange for a Transportation property insurance contract that included Business Income coverage.

63. Coverage under the Business Income provisions of their Transportation insurance contracts would compensate Plaintiff and Class Members for their injuries related to COVID-19.

64. Plaintiff and other Class Members have complied with all aspects of the policies issued by Transportation.

65. For purposes of Business Income coverage, Defendant is required to pay claims related to COVID-19 because the virus caused physical damage to Plaintiff's and Class Members' Covered Property. Plaintiff and Class Members suffered lost profits or other covered amounts due to the suspension or interruption of their businesses at the damaged properties.

66. Defendant has denied COVID-19 related claims en masse, such that the Court can effectively issue a declaratory judgment that would give all Class Members relief in determining their rights with respect to Business Income coverage in their Transportation policies.

67. An actual controversy exists between Defendant and Plaintiff and other Class Members because Plaintiff and Class Members contend, and Defendant denies, that there are claims for Business Income coverage under Transportation policies.

68. Plaintiff and other Class Members are entitled to a declaratory judgment under 28 U.S.C. § 2201 that (a) for purposes of Business Income coverage Plaintiff's and Class Members' losses incurred in connection with necessary interruption of their businesses due to the presence of COVID-19 and are insured losses; (b) Defendant is required to pay Plaintiff and other Class Members for the full amount of losses incurred for Business Income coverage.

## COUNT II

## DECLARATORY JUDGMENT

### (On Behalf of the Extra Expense Class)

69. Plaintiff incorporates and re-alleges the allegations set forth above.

70. Plaintiff and Class Members paid premiums in exchange for a Transportation property insurance contract that included Extra Expense coverage.

71. Coverage under the Extra Expense provisions of their Transportation insurance contracts would compensate Plaintiff and Class Members for their injuries related to COVID-19.

72. Plaintiff and other Class Members have complied with all aspects of the policies issued by Transportation.

73. For purposes of the Extra Expense coverage, Defendant is required to pay claims related to COVID-19 because Plaintiff and Class Members paid or incurred costs in a period of restoration of their Covered Property because they took precautions; performed repairs; purchased equipment or other services due to COVID-19; or otherwise incurred expenses that were directly due to the interruption or suspension of their businesses.

74. Defendant has denied COVID-19 related claims en masse, such that the Court can effectively issue a declaratory judgment that would give all Class Members relief in determining their rights with respect to Extra Expense coverage in their Transportation policies.

75. An actual controversy exists between Defendant and Plaintiff and other Class Members because Plaintiff and Class Members contend, and Defendant denies, that there are claims for Extra Expense coverage under Transportation policies.

76. Plaintiff and other Class Members are entitled to a declaratory judgment under 28 U.S.C. § 2201 that (a) for purposes of Extra Expense coverage, the amounts paid or incurred by Plaintiff and Class Members during the period of restoration of access to their Covered Property are insured losses; (b) Defendant is required to pay Plaintiff and other Class Members for the full amount of losses incurred for Extra Expense coverage.

## COUNT III

## DECLARATORY JUDGMENT

### (On Behalf of the Civil Authority Class)

77. Plaintiff incorporates and re-alleges the allegations set forth above.

78. Plaintiff and Class Members paid premiums in exchange for a Transportation property insurance contract that included Civil Authority coverage.

79. Coverage under the Civil Authority provisions of their Transportation insurance contracts would compensate Plaintiff and Class Members for their injuries related to COVID-19.

80. Plaintiff and other Class Members have complied with all aspects of the policies issued by Transportation.

81. For purposes of Civil Authority coverage, Defendant is required to pay for the lost profits other covered amounts that were caused by the issuance of orders, such as executive orders, closing and suspending business operations due to the physical presence of the virus that causes COVID-19 in close proximity to the Covered Property under Plaintiff's and Class Members' property policies issued by Transportation.

82. Defendant has denied COVID-19 related claims en masse, such that the Court can effectively issue a declaratory judgment that would give all Class Members relief in determining their rights with respect to Civil Authority coverage in their Transportation policies.

83. An actual controversy exists between Defendant and Plaintiff and other Class Members because Plaintiff and Class Members contend, and Defendant denies, that there are claims for Civil Authority coverage under Transportation policies.

84. Plaintiff and other Class Members are entitled to a declaratory judgment under 28 U.S.C. § 2201 that (a) for purposes of Civil Authority coverage, the interruption or suspension of Plaintiff's and Class Members' businesses have led to insured losses under their Transportation policies; (b) Defendant is required to pay Plaintiff and other Class Members for the full amount of losses incurred for Civil Authority coverage.

## VII. REQUEST FOR RELIEF

Plaintiff, individually and on behalf of the other Class members, respectfully requests that the Court:

   a. Enter judgment in their favor on all Counts;

   b. Certify the proposed nationwide Classes, appoint Plaintiff as a representative of the Class, and designate Plaintiff's counsel as counsel for the Class;

   c. Direct Defendant to pay attorneys' fees and costs of suit; and

   d. Order such other and further relief as may be just and proper.

## VIII. JURY DEMAND

Plaintiff hereby demands a trial by jury on all claims so triable.

Dated: April 29, 2020

**SCHNEIDER WALLACE COTTRELL KONECKY LLP**

*/s/ Todd M. Schneider*
Todd M. Schneider (SBN 158253)
Joshua G. Konecky (SBN 182897)
Matthew S. Weiler (SBN 236052)
2000 Powell Street, Suite 1400
Emeryville, CA 94608
Telephone: (415) 421-7100
tschneider@schneiderwallace.com
jkonekcy@schneiderwallace.com
mweiler@schneiderwallace.com

Peter B. Schneider (*pro hac vice* forthcoming)
Edward R. Batten (*pro hac vice* forthcoming)
Ryan R. Hicks (*pro hac vice* forthcoming)
3700 Buffalo Speedway, Suite 300
Houston, Texas 77098
Telephone: (713) 338-2560
Facsimile: (415) 421-7105
pschneider@schneiderwallace.com
ebatten@schneiderwallace.com
rhicks@schneiderwallace.com