Squire Patton Boggs (US) LLP
G. David Godwin, State Bar No. 148272
david.godwin@squirepb.com
Eric J. Knapp, State Bar No. 214352
eric.knapp@squirepb.com
Thomas J. Lloyd, State Bar No. 305507
thomas.lloyd@squirepb.com
275 Battery Street, Suite 2600
San Francisco, California 94111
Telephone:     +1 415 954 0200
Facsimile:     +1 415 393 9887

Attorneys for Defendant Transportation Insurance
Company

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| O'BRIEN SALES AND MARKETING, INC., on behalf of itself and other similarly situated,<br><br>Plaintiff,<br><br>V.<br><br>TRANSPORTATION INSURANCE COMPANY,<br><br>Defendant. | Case No. 20-cv-02951-MMC<br><br>DEFENDANT TRANSPORTATION INSURANCE COMPANY'S NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFF'S COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT<br><br>Judge:  Hon. Maxine M. Chesney<br>Date:    August 21, 2020<br>Time:   9:00 a.m.<br>Crtrm:  7<br><br>Action Filed:  April 29, 2020<br><br>ORAL ARGUMENT REQUESTED |

SQUIRE PATTON BOGGS (US) LLP
275 Battery Street, Suite 2600
San Francisco, California 94111

SQUIRE PATTON BOGGS (US) LLP
275 Battery Street, Suite 2600
San Francisco, California 94111

## NOTICE OF MOTION AND MOTION TO DISMISS

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

NOTICE IS HEREBY GIVEN that on August 21, 2020 at 9:00 a.m. or as soon thereafter as counsel may be heard, before the Honorable Maxine M. Chesney, in Courtroom 7 of the United States Courthouse, located at 450 Golden Gate Avenue, San Francisco, California, Defendant Transportation Insurance Company ("Defendant" or "TIC") will and hereby does move the Court to dismiss Plaintiff O'Brien Sales & Marketing, Inc.'s ("Plaintiff" or "O'Brien") Complaint for Declaratory Relief.

Defendant's Motion seeks an order dismissing the Complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure on the ground that the Complaint fails to state a claim upon which relief can be granted. Defendant's Motion is based on this Notice of Motion and Motion, the Memorandum of Points and Authorities contained herein, the accompanying Declaration of Jason Deitzel, the accompanying Request for Judicial Notice, any reply papers that may be submitted, on the arguments of counsel at any hearing that may be held, all of the pleadings, files and records in this proceeding, and any other such matters as the Court may consider at the time of the hearing on the motion.

Dated:  July 7, 2020

Respectfully submitted,

Squire Patton Boggs (US) LLP

By: */s/ G. David Godwin*
 G. David Godwin

Attorneys for Defendant
Transportation Insurance Company

- ii -

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

SQUIRE PATTON BOGGS (US) LLP
275 Battery Street, Suite 2600
San Francisco, California 94111

## <u>TABLE OF CONTENTS</u>

STATEMENT OF ISSUES TO BE DECIDED ................................................................. 1

PRELIMINARY STATEMENT ...................................................................................... 1

I.     STATEMENT OF FACTS ..................................................................................... 2

    A.     The Parties ................................................................................................... 3

    B.     Plaintiff's Alleged Business Losses and the Shelter-In-Place Orders.............. 3

    C.     The Policy..................................................................................................... 5

    D.     Plaintiff's Insurance Claim and This Lawsuit ................................................ 7

II.    ARGUMENT ......................................................................................................... 8

    A.     Legal Standard............................................................................................. 8

    B.     The Policy Does Not Provide Coverage for Plaintiff's Alleged Losses .......... 9

       1.     The Business Income and Extra Expense Claims Should Be Dismissed Because O'Brien Did Not Suffer Direct Physical Loss of or Damage to Property............................. 11

       2.     Plaintiff's Civil Authority Claim Should Be Dismissed Because Plaintiff Has Not Alleged Facts Showing Direct Physical Loss of or Damage to Property at Another Location or That Access to its Premises Was Prohibited............................ 16

       3.     Because Plaintiff Has Not Alleged a Claim within the Policy's Grant of Coverage, the Purported Absence of a Virus Exclusion Is Irrelevant.......................... 19

III.   Conclusion ........................................................................................................... 20

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Abner, Herrman & Brock, Inc. v. Great Northern Ins. Co.*,
   308 F. Supp. 2d 331 (S.D.N.Y. 2004) ..................................................................... 17

*AIU Ins. Co. v. Superior Court (FMC Corporation)*,
   51 Cal. 3d 807 (Cal. 1990) ..................................................................................... 10

*Am. W. Door & Trim v. Arch Specialty Ins. Co.*,
   2015 U.S. Dist. LEXIS 34589 (C.D. Cal. Mar. 18, 2015) ........................................ 9

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ................................................................................................. 8

*Aydin Corp. v. First State Ins. Co.*,
   18 Cal. 4th 1183 (Cal. 1998) ..................................................................... 1, 5, 9, 19

*Balistreri v. Pacifica Police Dep't*,
   901 F.2d 696 (9th Cir. 1990) .................................................................................... 8

*Bell Atlantic Corp. v. Twombly*,
   550 U.S. 544 (2007) ................................................................................................. 8

*Bristol-Myers Squibb Co. v. Superior Court of California*,
   137 S. Ct. 1773 (2017) ............................................................................................. 9

*Carpenter v. PetSmart, Inc.*,
   2020 U.S. Dist. LEXIS 35459 (S.D. Cal. Mar. 2, 2020) ........................................... 9

*Corcoran v. CVS Health Corp.*,
   2016 WL 948880 (N.D. Cal. 2016) ........................................................................... 9

*Gardner v. Martino*,
   563 F.3d 981 (9th Cir. 2009) .................................................................................. 20

*Gavrilides Mgmt. Co.* v. *Michigan Ins. Co.*,
   Case No. 20-258-CB-C30 (Ingham County) (Mich. Cir. Ct. July 1, 2020) .......... 13, 15

*Gov't Empls. Ins. Co. v. Nadkarni*,
   391 F. Supp. 3d 917 (N.D. Cal. 2019) ................................................................. 9, 19

*Hotchalk, Inc. v. Scottsdale Ins. Co.*,
   217 F. Supp. 3d 1058 (N.D. Cal. 2016) ................................................................. 11

*Ins. Co. of N. Am. v. Fed. Exp. Corp.*,
   189 F.3d 914 (9th Cir. 1999) .................................................................................. 10

- iv -

SQUIRE PATTON BOGGS (US) LLP
275 Battery Street, Suite 2600
San Francisco, California 94111

*Kean, Miller, Hawthorne, D'Armond McCowan & Jarman, LLP v. Nat'l Fire Ins. Co. of Hartford*,
   No. 06-770-C, 2007 WL 2489711 (M.D. La. Aug. 29, 2007) ................................................. 17

*Mama Jo's, Inc. v. Sparta Ins. Co.*,
   No. 17-cv-23362-KMM, 2018 WL 3412974 (S.D. Fla. June 11, 2018) ................................ 14

*Mastellone* v. *Lightning Rod Mut. Ins. Co.*,
   884 N.E.2d 1130 (Ohio Ct. App. 2008) ................................................................................ 14

*Meridian Textiles, Inc. v. Indem. Ins. Co.*,
   No. CV 06-4766 CAS, 2008 U.S. Dist. LEXIS 91371 (C.D. Cal. Mar. 20, 2008) ................................................................................................................................. 12

*MRI Healthcare Ctr. of Glendale, Inc. v. State Farm Gen. Ins. Co.*,
   187 Cal. App. 4th 766 (Cal. Ct. App. 2010) ........................................................................ 12

*Newman Myers Kreines Gross, P.C. v. Great N. Ins. Co.*,
   17 F. Supp. 3d 323 (S.D.N.Y. 2014) ............................................................................ 13, 15

*Parducci v. Overland Sols.*,
   399 F. Supp. 3d 969 (N.D. Cal. 2019) ................................................................................... 2

*Phila. Parking Auth. v. Fed. Ins. Co.*,
   385 F. Supp. 2d 280 (S.D.N.Y. 2005) ................................................................................. 15

*Port Auth. of N.Y. & N.J. v. Affiliated FM Ins. Co.*,
   311 F.3d 226 (3d Cir. 2002) ................................................................................................ 13

*S. Hospitality, Inc. v. Zurich Am, Ins. Co.*,
   393 F.3d 1137, 1140–41 (10th Cir. 2004) ........................................................................... 17

*Sheahan v. State Farm Gen. Ins. Co.*,
   394 F. Supp. 3d 997 (N.D. Cal. 2019) ................................................................................. 11

*Ski Shawnee, Inc. v. Commonwealth Ins. Co.*,
   No. 3:09-CV-02391, 2010 WL 2696782 (M.D. Pa. July 6, 2010) .................................. 17, 19

*Social Life Magazine, Inc.* v. *Sentinel Ins. Co. Ltd.*,
   No. 20 Civ. 3311 (VEC) (S.D.N.Y. May 14, 2020) ............................................................. 14

*Syufy Enters. v. Home Ins. Co.*,
   No. 94-0756 FMS, 1995 U.S. Dist. LEXIS 3771 (N.D. Cal. 1995) ................................ 17, 18

*Tarakanov v. Lexington Ins. Co.*,
   2020 U.S. Dist. LEXIS 40903, __ F. Supp. 3d ___ (N.D. Cal. 2020) ................................ 10

*Ticor Title Ins. Co. v. Employers Ins. of Wausau*,
   40 Cal. App. 4th 1699, 48 Cal. Rptr. 2d 368 (Cal. Ct. App. 1995) ..................................... 10

SQUIRE PATTON BOGGS (US) LLP
275 Battery Street, Suite 2600
San Francisco, California 94111

- v -

*Tu v. Dongbu Ins. Co.*,
  2018 U.S. Dist. LEXIS 151322 (N.D. Cal. 2018) ................................................... 17

*United Air Lines v. Ins. Co. of the State of Pa.*,
  439 F.3d 128, 134–35 (2d Cir. 2006) ...................................................................... 19

*Ward Gen. Ins. Servs., Inc. v. Emp'rs Fire Ins. Co.*,
  114 Cal. App. 4th 548 (Cal. Ct. App. 2003) ...................................................... 11, 12

*Zaghi v. State Farm Gen. Ins. Co.*,
  77 F. Supp. 3d 974 (N.D. Cal. 2015) ...................................................................... 10

**Statutes**

California Civil Code § 1638 ....................................................................................... 10

California Civil Code § 1639 ....................................................................................... 10

California Civil Code § 1646 ....................................................................................... 10

Government Code Section 8558(b) ................................................................................ 4

**Other Authorities**

CDC, Vaccines & Immunizations: Glossary, *at*
  https://www.cdc.gov/vaccines/terms/glossary.html ................................................. 19

Executive Order N-33-20 ..................................................................................... *passim*

Federal Rules of Civil Procedure Rule 12(b)(1) ........................................................... 9

Federal Rules of Civil Procedure Rule 12(b)(6) ............................................... 1, 8, 20

SQUIRE PATTON BOGGS (US) LLP
275 Battery Street, Suite 2600
San Francisco, California 94111

- vi -

**SQUIRE PATTON BOGGS (US) LLP**
275 Battery Street, Suite 2600
San Francisco, California 94111

## MEMORANDUM OF POINTS AND AUTHORITIES

TIC respectfully submits the following memorandum of points and authorities in support of its motion to dismiss with prejudice all claims asserted against it in the Class Action Complaint [Doc. 1] (the "Complaint") of Plaintiff pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. The Complaint fails to state a claim upon which relief may be granted because the unambiguous terms of Plaintiff's insurance policy with TIC do not provide coverage for Plaintiff's claim. The grounds for this motion are further provided in this memorandum, in the Declaration of Jason Deitzel and attached exhibits, in the Complaint, in the Request for Judicial Notice and upon such further evidence or argument as the Court permits.

## STATEMENT OF ISSUES TO BE DECIDED

Whether Plaintiff's claims for declaratory judgment should be dismissed with prejudice on the ground that the terms of the policy issued by TIC to Plaintiff do not provide Business Income, Extra Expense, and/or Civil Authority coverage for Plaintiff's alleged loss.

## PRELIMINARY STATEMENT

This is an insurance coverage action arising out of the COVID-19 pandemic. Plaintiff, a marketing agency in Newport Beach, California, alleges that its property insurance policy with TIC provides coverage for business interruption losses purportedly incurred as a result of COVID-19. On behalf of putative classes of TIC insureds, Plaintiff asserts three claims, each seeking a declaration of coverage under one of three provisions of its policy: those affording Business Income, Extra Expense, and Civil Authority coverage respectively. Plaintiff alleges that TIC issued blanket denials for all COVID-19 claims, including Plaintiff's claim and the claims of putative class members nationwide, regardless of their merits. But the threshold question on this motion is whether *Plaintiff's* policy affords coverage for *its* alleged loss. It does not. Although the global COVID-19 pandemic has disrupted businesses around the world, the unambiguous terms of Plaintiff's policy do not provide coverage for Plaintiff's alleged losses.

*First*, Plaintiff's claims for Business Income and Extra Expense coverage fail because the plain language of the policy provides that such coverage applies *only* when the suspension of

- 1 -

1  Plaintiff's operations is caused by "direct physical loss of or damage to" property at the insured's

2  premises.  The Complaint does not plausibly allege that O'Brien's property suffered *any* direct

3  physical loss or damage.  Without any direct physical loss of or damage to Plaintiff's property,

4  coverage under the Policy is not triggered, and no recovery is available.

5  *Second*, Plaintiff's Civil Authority claim fails because the Complaint does not plead either

6  of the two prerequisites for coverage: the orders relied upon in the Complaint—the Governor's

7  March 4, 2020 Proclamation of a State of Emergency (the "Proclamation") and his March 19,

8  2020 Executive Order N-33-20 (the "Executive Order")—were not enacted because of direct

9  physical loss of or damage to property at another location, and they did not prohibit access to

10  Plaintiff's premises.  To the contrary, the Proclamation and the Executive Order were issued to

11  facilitate the treatment of people infected with the virus and to limit person-to-person contact "to

12  bend the curve" of contagion.  Moreover, neither the Proclamation nor the Executive Order

13  restricts access to Plaintiff's premises.

14  For all these reasons, Plaintiff is not entitled to coverage under the policy, and the

15  Complaint should be dismissed with prejudice.

16  **I.   STATEMENT OF FACTS**

17  The facts alleged or incorporated by reference in the Complaint, or of which the Court

18  may take judicial notice on this motion, are summarized below.

19  TIC respectfully requests that the Court take judicial notice of Plaintiff's insurance policy

20  with TIC (Ex. A), and the Proclamation and the Executive Order (Exs. B and C).  On a motion to

21  dismiss, the Court may consider documents referenced in the complaint but not attached to it so

22  long as the documents are referred to by the complaint, are central to the allegations, and are of

23  unquestioned authenticity.  (*Parducci v. Overland Sols.*, 399 F. Supp. 3d 969, 979 n.2 (N.D. Cal.

24  2019) (relying on underlying insurance policy attached to motion to dismiss in granting the

25  motion).)  Here, there can be no question as to the authenticity of these documents, and Plaintiff's

26  policy is repeatedly referenced in the Complaint and central to the allegations—indeed, it is the

27  source of the purported right to coverage that Plaintiff seeks to have declared—and the

28

- 2 -

SQUIRE PATTON BOGGS (US) LLP
275 Battery Street, Suite 2600
San Francisco, California 94111

1  Proclamation and the Executive Order are likewise referred to in the Complaint and central to

2  Plaintiff's claims under the Civil Authority endorsement.  (Complaint ¶¶ 15 and 40.)

3      **A.   The Parties**

4        Plaintiff is a marketing agency located in Newport Beach, California.  (*Id.* ¶ 13.)

5  Defendant is an insurance company incorporated under the laws of Illinois, with its principal

6  place of business in Chicago, Illinois.  Defendant issues insurance policies to policyholders in

7  California and other states.  (*Id.* ¶ 14.)

8      **B.   Plaintiff's Alleged Business Losses and the Shelter-In-Place Orders**

9        Plaintiff alleges its business was suspended "by the presence of the virus that causes

10  COVID-19," and "Plaintiff was required to take measures to prevent further interruption and

11  damage."  (*Id.* ¶ 8.)  Although the Complaint alleges in conclusory terms that Plaintiff's

12  "business, and its premises, were physically damaged by the presence of the virus that causes

13  COVID-19" (*id.*), it does not allege any *facts* from which that conclusory statement could

14  plausibly be inferred.  The Complaint does *not* allege that the virus that causes COVID-19 was

15  *present at the insured's premises,* or even that any employee or client of O'Brien was diagnosed

16  with COVID-19.

17        In support of its claim for coverage under the Civil Authority endorsement, Plaintiff

18  further alleges that "[t]he Governor of California issued Executive Orders, including Executive

19  Order N-33-20, that limit[ed] or reduce[d] the normal business operations of business in

20  Plaintiff's community."  (*Id.* ¶ 40.)  The relevant orders are the Proclamation and the Executive

21  Order.

22        On March 4, 2020, the Governor of the State of California signed the Proclamation, which

23  states that the State of California has taken various actions to monitor and plan for the potential

24  spread of COVID-19, preserve public health, and provide guidance to health care facilities and

25  providers.  (Ex. B.)  It further notes that, as of March 4, 2020, there were 53 confirmed cases of

26  COVID-19 in California, with more cases expected.  (*Id.*)  The Proclamation recognizes that,

27  while California has a robust pandemic influenza plan and a strong health care delivery system,

28

SQUIRE PATTON BOGGS (US) LLP
275 Battery Street, Suite 2600
San Francisco, California 94111

- 3 -

SQUIRE PATTON BOGGS (US) LLP
275 Battery Street, Suite 2600
San Francisco, California 94111

"it is imperative to prepare for and respond to suspected or confirmed COVID-19 cases in California, to implement measures to mitigate the spread of COVID-19, and to prepare to respond to an increasing number of individuals requiring medical care and hospitalization …." (*Id.*)  The Order set forth in the Proclamation contains 14 items, none of which makes any mention of physical loss of or damage to property. (*Id.*)  Rather, the Order is focused on making available all resources to treat patients afflicted with COVID-19. (*Id.*)

On March 19, 2020, Governor Newsom issued the Executive Order, which requires all residents living in the State of California to stay at home.  (Ex. C.)  The stated purpose of the Executive Order is: "To preserve the public health and safety, and to ensure the healthcare delivery system is capable of serving all, and prioritizing those at the highest risk and vulnerability …." (*Id.* at 1.)  The Order of the State Public Health Officer, also dated March 19, 2020 (the "Public Health Order"), is made part of the Executive Order and expressly states: "This Order is being issued to protect the public health of Californians.  The California Department of Public Health looks to establish consistency across the state in order to ensure that we mitigate the impact of COVID-19.  Our goal is simple, we want to bend the curve, and disrupt the spread of the virus." (*Id.* at 2.)  Neither the Executive Order nor the Public Health Order mentions physical loss of or damage to property.

Plaintiff contends that the Proclamation requires a finding of the existence of the circumstances described in Government Code Section 8558(b), which includes "'conditions of disaster or of extreme peril to the safety of persons and property' caused by conditions such as epidemics," and that the Executive Order "is premised on a finding by the Governor of extreme peril to property as a result of the epidemic."  (Complaint ¶ 40.)  But that contention is belied by the orders themselves:  neither the Proclamation nor the Executive Order makes any reference to peril to property.  Rather, the stated purpose of both measures is to promote effective care for people infected by the virus and to protect others from infection by stemming its spread.

- 4 -

## C. The Policy

Plaintiff purchased from TIC a CNA Connect Policy, Policy No. B 5094898147, for the period December 17, 2019 to December 17, 2020 (the "Policy").  (Complaint ¶ 15; Ex. A at 5.) [1] The Policy provides both first-party property coverage and liability coverage.  The property coverage, as set forth in the Businessowners Special Property Coverage Form (Form SB-146801-1), and its incorporated Declarations, Endorsements, and Exclusions, is relevant to Plaintiff's claims here.  (*See* Complaint ¶¶ 4-7, 15.)  Specifically, Plaintiff alleges that the Policy includes three grants of "coverage" that should provide compensation for Plaintiff's alleged business losses:  Business Income, Extra Expense and Civil Authority.  (*Id.* ¶ 16.)  The trigger for coverage under each of these provisions is "direct physical loss of or damage to property" at the insured's premises (for the Business Income and Extra Expense coverage) or other premises (for Civil Authority coverage).

*First*, Business Income coverage, as set forth in the Business Income and Extra Expense Endorsement, allows Plaintiff to recover business income lost as a result of the suspension of its operations caused by "direct physical loss of or damage to property" at Plaintiff's premises resulting from a cause of loss insured under the Policy.  The relevant term of the Policy provides:

> **1. Business Income**
>
>    **…**
>
>    **b.** We will pay for the actual loss of Business Income you sustain due to the necessary "suspension" of your "operations" during the "period of restoration." The "suspension" must be caused by direct physical loss of or damage to property at the described premises. The loss or damage must be caused by or result from a Covered Cause of Loss.

(Ex. A at 36.)  "Suspension" means the "partial or complete cessation of your [the insured's] business activities" (Ex. A at 33), and "operations" means "the type of your [the insured's] business activities occurring at the described premises and tenantability of the described premises" (*id.* at 31).  A "Covered Cause of Loss" means "RISKS OF DIRECT PHYSICAL

---

[1] References to page numbers for Exhibits are to the document control numbers applied at the top right of each document.

SQUIRE PATTON BOGGS (US) LLP
275 Battery Street, Suite 2600
San Francisco, California 94111

LOSS" unless excluded or limited under the Policy.  (*Id.* at 15-16.)  Plaintiff alleges that it experienced a "suspension" of its business "by the presence of the virus and Plaintiff was required to take measures to prevent further interruption and damage."  (Complaint ¶ 8.)  Plaintiff further asserts that the "presence of COVID-19 caused 'direct physical loss of or damage to' each 'Covered Property' by requiring it to be shut down," but does not specify the nature of such alleged damage, nor explain how being required to "shut down" could cause "direct physical loss of or damage to" its property.  (*Id.* ¶ 39.)  In addition, the Complaint pleads generally that the "presence of virus particles alone is enough to make the property dangerous or less valuable," but does not plead that the virus was present on its property.  (*Id.* ¶ 32; *see also id.* ¶ 8.)

*Second*, Extra Expense coverage allows Plaintiff to recover reasonable and necessary expenses incurred during the "period of restoration" that would not have been incurred if there had been no direct physical loss of or damage to the insured's property from a covered cause of loss.  The relevant term of the Policy provides:

> **2.  Extra Expense**
>
> **a.**  Extra Expense means reasonable and necessary expenses you incur during the "period of restoration" that you would not have incurred if there had been no direct physical loss of or damage to property caused by or resulting from a Covered Cause of Loss.
>
> **b.**  We will pay Extra Expense (other than the expense to repair or replace property) to:
>
> **(1)**  Avoid or minimize the "suspension" of business and to continue "operations" at the described premises or at replacement premises or temporary locations, including relocation expenses and costs to equip and operate the replacement premises or temporary locations; or
>
> **(2)**  Minimize the "suspension" of business if you cannot continue "operations."

(Ex. A at 37.)  Plaintiff alleges that it is entitled to coverage for Extra Expense "because Plaintiff and Class Members paid or incurred costs in a period of restoration of the Covered Property … due to COVID-19; or otherwise incurred expenses that were directly due to the interruption or suspension of their businesses."  (Complaint ¶ 73.)  Under the Policy, the "period of restoration"

means the date that "[b]egins with the date of direct physical loss or damage caused by or resulting from any Covered Cause of Loss at the described premises; and [e]nds on the earlier of: (1) The date when the property at the described premises should be repaired, rebuilt or replaced with reasonable speed and similar quality; or (2) The date when business is resumed at a new permanent location."  (Ex. A at 31.)

*Third*, Civil Authority coverage allows Plaintiff to recover its lost Business Income and Extra Expense when a civil authority—i.e., a government entity—prohibits access to Plaintiff's premises (here, Plaintiff's office suite) because of "direct physical loss of or damage to" property at locations *other than* the insured's premises caused by a Covered Cause of Loss.  This coverage would, for example, cover business interruption if a government entity prohibited access to the insured's premises as a result of a fire in a building across the street from the premises.  The relevant terms of the Policy provide:

**Civil Authority**

**1.** When the Declarations show that you have coverage for Business Income and Extra Expense, you may extend that insurance to apply to the actual loss of Business Income you sustain and reasonable and necessary Extra Expense you incur caused by action of civil authority that prohibits access to the described premises.  The civil authority action must be due to direct physical loss of or damage to property at locations, other than described premises, caused by or resulting from a Covered Cause of Loss.

(Ex. A at 62.)  Plaintiff alleges that the Executive Order closed and suspended "business operations due to the physical presence of the virus that causes COVID-19 in close proximity to the Covered Property," but does not allege any facts showing that the virus was "in close proximity" or that it caused physical loss of or damage to property at some other premises.  (Complaint ¶ 81.)

**D.  Plaintiff's Insurance Claim and This Lawsuit**

Plaintiff alleges it "tendered claims" to TIC for Business Income, Extra Expense and Civil Authority coverage related to the virus that causes COVID-19.  (*Id.* ¶¶ 10 and 46.)  Plaintiff fails to allege any facts concerning when it submitted a claim, whether it reported any suspension of

SQUIRE PATTON BOGGS (US) LLP
275 Battery Street, Suite 2600
San Francisco, California 94111

business operations, the reason for such a suspension (if any), or whether it identified any direct physical loss of or damage to its property. Plaintiff also fails to allege when TIC responded to its claim and the contents of that response. Rather, Plaintiff contends that TIC denied all claims nationwide "en masse." (*Id.* ¶¶ 10, 66, 74 and 82.)

On April 29, 2020, Plaintiff filed this lawsuit—a purported nationwide class action brought on behalf of all TIC policyholders, without regard for, among other things, the terms and conditions of the insured's particular policy, its business type, its geographic location, or the facts and circumstances of any alleged loss. (Complaint ¶¶ 48–51.) The Complaint asserts three claims for declaratory judgment. (*Id.* ¶¶ 61-84.) The declaratory judgment counts seek declarations that Plaintiff's losses, and those of the putative class members, stemming from the COVID-19 pandemic are insured losses under the Business Income, Extra Expense, and Civil Authority provisions of their respective policies.

## II.  ARGUMENT

### A.    Legal Standard

Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, dismissal "can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." (*Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990).) "[A] plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." (*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal quotation, citation, and alteration omitted).)

"To survive a motion to dismiss, a complaint must contain sufficient factual material, accepted as true, to 'state a claim to relief that is plausible on its face.'" (*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570).) "Factual allegations must be enough to raise a right to relief above the speculative level[.]" (*Twombly*, 550 U.S. at 555.) Courts "are not bound to accept as true a legal conclusion couched as a factual allegation." (*Iqbal*, 556 U.S. at 678 (internal quotation and citation omitted).)

SQUIRE PATTON BOGGS (US) LLP
275 Battery Street, Suite 2600
San Francisco, California 94111

1   Even taking Plaintiff's factual, non-conclusory allegations as true, however, the

2   unambiguous terms of the Policy do not permit recovery, and the Complaint should be

3   dismissed.

4   To the extent plaintiff seeks to assert claims on behalf of nationwide putative classes

5   (Complaint ¶¶ 49-51), TIC does not consent to personal jurisdiction in this Court as to the claims

6   of putative class members that are not residents of the State of Californian.  (*See Bristol-Myers*

7   *Squibb Co. v. Superior Court of California*, 137 S. Ct. 1773 (2017).)  While there exists a split of

8   authority among the federal courts, including in this district, as to whether *Bristol-Myers Squibb*

9   applies in the context of class actions as opposed to mass torts, TIC contends that the better-

10   reasoned decisions compel a finding that this Court lacks jurisdiction over claims of non-resident,

11   absent class members.  (*See, e.g., Carpenter v. PetSmart, Inc.*, 2020 U.S. Dist. LEXIS 35459, at

12   *12-13 (S.D. Cal. Mar. 2, 2020) (noting split among federal courts here and elsewhere and

13   "finding that *Bristol-Myers Squibb* applies in the nationwide class action context.").)  In addition,

14   plaintiff lacks standing under Rule 12(b)(1) of the Federal Rules of Civil Procedure to assert

15   claims on behalf of non-California putative class members because the laws of the states of the

16   absent class members would apply to the interpretation of their policies but not to plaintiff's

17   claims. (*Carpenter*, 2020 U.S. Dist. LEXIS 35459, at *21-26) (holding that California named

18   plaintiff lacked standing to press "claims on behalf of unnamed class members under other states'

19   laws that do not govern his own claims"); *see also Corcoran v. CVS Health Corp.*, 2016 WL

20   948880, at *12 (N.D. Cal. 2016) ("Courts routinely dismiss claims where no plaintiff is alleged to

21   reside in a state whose laws the class seeks to enforce."); (*Am. W. Door & Trim v. Arch Specialty*

22   *Ins. Co.*, 2015 U.S. Dist. LEXIS 34589, at *23 (C.D. Cal. Mar. 18, 2015) (state insurance law

23   inherently "varies by state").)

24   **B.      The Policy Does Not Provide Coverage for Plaintiff's Alleged Losses**

25   It is the insured's burden to establish that the claim is within the scope of insurance

26   coverage.  (*Aydin Corp. v. First State Ins. Co.*, 18 Cal. 4th 1183, 1188 (Cal. 1998); *Gov't Empls.*

27   *Ins. Co. v. Nadkarni*, 391 F. Supp. 3d 917, 925 (N.D. Cal. 2019).)  Accordingly, a complaint

28

- 9 -

SQUIRE PATTON BOGGS (US) LLP
275 Battery Street, Suite 2600
San Francisco, California 94111

1  seeking a declaration that an insuring agreement provides the asserted coverage must allege

2  sufficient facts to show that the claims fall within the policy's coverage.

3       In this diversity case, California substantive law applies, including its choice-of-law rules.

4  (*Ins. Co. of N. Am. v. Fed. Exp. Corp.*, 189 F.3d 914, 919 (9th Cir. 1999).)[2]  Under California

5  law, insurance policies "are contracts to which the ordinary rules of contract interpretation apply."

6  (*Zaghi v. State Farm Gen. Ins. Co.*, 77 F. Supp. 3d 974, 977 (N.D. Cal. 2015) (citing *Travelers*

7  *Cas. & Sur. Co. v. Transcon. Ins. Co.*, 122 Cal. App. 4th 949, 955, 19 Cal. Rptr. 3d 272 (Cal. Ct.

8  App. 2004) and *Bank of the West v. Superior Court*, 2 Cal.4th 1254, 1264, 10 Cal. Rptr. 2d 538,

9  833 P.2d 545 (Cal. Ct. App. 1992)).)  California insurance law requires that the interpretation of a

10  policy give effect to the parties' mutual intentions as of the time of contracting.  (*AIU Ins. Co. v.*

11  *Superior Court (FMC Corporation)*, 51 Cal. 3d 807, 821 (Cal. 1990).)  "Where contract language

12  is clear and explicit and does not lead to absurd results, we ascertain intent from the written terms

13  and go no further."  (*Ticor Title Ins. Co. v. Employers Ins. of Wausau*, 40 Cal. App. 4th 1699,

14  1707, 48 Cal. Rptr. 2d 368 (Cal. Ct. App. 1995); *see also* Cal. Civ. Code § 1638 ("The language

15  of a contract is to govern its interpretation, if the language is clear and explicit, and does not

16  involve an absurdity."); *id.* § 1639 ("When a contract is reduced to writing, the intention of the

17  parties is to be ascertained from the writing alone, if possible ....").)  Policy terms are applied as

18  defined in the document or, when not defined, read in their ordinary and popular sense.  (*AIU Ins.*

19  *Co.*, 51 Cal. 3d at 825.)

20       Where, as here, the insured cannot meet its burden to show that the policy provides the

21  claimed coverage, courts in this District will dismiss the complaint.  (*See Tarakanov v. Lexington*

22  *Ins. Co.*, 2020 U.S. Dist. LEXIS 40903, __ F. Supp. 3d ___ (N.D. Cal. 2020) (dismissing first-

23  party property insurance claim arising from the 2017 Northern California wildfires for failure to

---

[2] One of California's choice-of-law tests is set forth in California Civil Code § 1646, which states
that "[a] contract is to be interpreted according to the law and usage of the place where it is to be
performed; or, if it does not indicate a place of performance, according to the law and usage of
the place where it is made."  Plaintiff is a California entity with its business located in Newport
Beach, California.  The Policy provides coverage for Plaintiff's Covered Property, which is
located at the designated Newport Beach location.  Consequently, California law applies to the
coverage issues presented under Plaintiff's Policy.

DEFENDANT'S MOTION TO DISMISS
20-cv-002951-MMC

SQUIRE PATTON BOGGS (US) LLP
275 Battery Street, Suite 2600
San Francisco, California 94111

state a plausible claim); *Hotchalk, Inc. v. Scottsdale Ins. Co.*, 217 F. Supp. 3d 1058 (N.D. Cal. 2016) (dismissing claim of coverage for false claims act violations under directors and officers policy); *Sheahan v. State Farm Gen. Ins. Co.*, 394 F. Supp. 3d 997 (N.D. Cal. 2019) (dismissal of putative class action concerning claims of undervaluing of replacement costs for wildfire damaged homes).)

### 1.    The Business Income and Extra Expense Claims Should Be Dismissed Because O'Brien Did Not Suffer Direct Physical Loss of or Damage to Property

The Complaint does not plausibly allege Business Income and Extra Expense claims that fall within the coverage provisions of the Policy.  The plain language of the Business Income and Extra Expense Endorsement provides coverage for "actual loss of Business Income [Plaintiff] sustains due to the necessary 'suspension' of [Plaintiff's] 'operations'" only if (1) the suspension is "caused by direct physical loss of or damage to property at the described premises" and (2) the direct physical loss or damage is "caused by or result[s] from a Covered Cause of Loss."  (Ex. A at 36.)  The described premises is defined to mean "[t]he portion of the building which you [Plaintiff] rent, lease or occupy"—in Plaintiff's case, "2901 W. Coast Hwy Ste 200 Newport Beach, CA," as set forth in the Policy Declarations—and any portion of the building used by Plaintiff to gain access to its suite.  (*Id.* at 36.)

The Extra Expense provision similarly requires "direct physical loss of or damage to property caused by or resulting from a Covered Cause of Loss."  (*Id.* at 37.)  "Thus, although the damage covered, loss of income, is not itself a physical loss, the loss of income must be *caused* by a physical loss…."  (*Ward Gen. Ins. Servs., Inc. v. Emp'rs Fire Ins. Co.*, 114 Cal. App. 4th 548, 555 (Cal. Ct. App. 2003) (emphasis in original).)  Because the Complaint does not plausibly allege that property at Plaintiff's premises suffered any direct physical loss or damage, and attributes Plaintiff's suspension of its business (and resulting losses) to the COVID-19 pandemic, the Proclamation, and the Executive Order, not physical damage to property, no coverage is available under the Policy.

SQUIRE PATTON BOGGS (US) LLP
275 Battery Street, Suite 2600
San Francisco, California 94111

SQUIRE PATTON BOGGS (US) LLP
275 Battery Street, Suite 2600
San Francisco, California 94111

### a. Plaintiff Does Not Plausibly Allege "Direct Physical Loss of or Damage To" Plaintiff's Property

The Policy expressly and unambiguously provides that Business Income and Extra Expense losses are covered only if those losses result from direct *physical* loss of or damage to the insured's property.  California courts have interpreted the phrase "direct physical loss of or damage to" property to require either "direct physical loss of" or "direct physical damage to" property.  (*Ward Gen. Ins. Servs., Inc.*, 114 Cal. App. 4th at 554 ("[W]e construe the words 'direct physical' to modify both 'loss of' and 'damage to.'").)  "That the loss needs to be 'physical,' given the ordinary meaning of the term, is 'widely held to exclude alleged losses that are intangible or incorporeal, and, thereby, to preclude any claim against the property insurer when the insured merely suffers a detrimental economic impact unaccompanied by a distinct, demonstrable, physical alteration of the property.'"  (*MRI Healthcare Ctr. of Glendale, Inc. v. State Farm Gen. Ins. Co.*, 187 Cal. App. 4th 766, 779 (Cal. Ct. App. 2010) (quoting 10A Couch on Insurance, § 148:46 at p. 148-81).)  Physical loss or damage thus requires that "some *external force* must have acted upon the insured property to cause a *physical change* in the condition of the property, i.e., it must have been 'damaged' within the common understanding of that term."  (*MRI Healthcare*, 187 Cal. App. 4th at 780 (emphasis in original); *see also Meridian Textiles, Inc. v. Indem. Ins. Co.*, No. CV 06-4766 CAS, 2008 U.S. Dist. LEXIS 91371, at *17 (C.D. Cal. Mar. 20, 2008) (holding that in order to trigger coverage under a physical loss or damage provision, the insured must demonstrate "some tangible change" in the property or "some detectable physical change").)

California law requiring tangible, physical damage to trigger coverage is consistent with authority in other jurisdictions.  For example, in a recent decision on all fours with Plaintiff's claims here, a Michigan court dismissed the plaintiff's business interruption claim for alleged losses caused by the COVID-19 pandemic for failure to allege direct physical loss of or damage to its property.  (*See Gavrilides Mgmt. Co.* v. *Michigan Ins. Co.*, Case No. 20-258-CB-C30 (Ingham County) (Mich. Cir. Ct. July 1, 2020) (Decision granted on the record [ https://www.youtube.com/watch?v=Dsy4pA5NoPw&feature=youtu.be].)  Similar to Plaintiff's

- 12 -

claim for Civil Authority coverage, the claim in *Gavrilides* was premised entirely on orders issued by the Governor of the State of Michigan that restricted dine-in services at plaintiff's restaurant and caused plaintiff to reduce operations. The court summarily rejected plaintiff's argument that it experienced a physical loss of property because customers were physically prohibited from dining in at plaintiff's restaurant, calling the argument "nonsense" and concluding that it came "nowhere close to meeting the requirement that there has to be some physical alteration to or physical damage or tangible damage to the integrity" of the property to trigger coverage. (*Id.*) The court granted the defendant's motion for summary disposition without leave to amend, noting that amendment would be futile because the Michigan executive orders and the coronavirus "do not constitute the direct physical damage or injury that is required under the policy". (*Id.*) [3]

Similarly, in *Newman Myers Kreines Gross, P.C. v. Great N. Ins. Co.*, 17 F. Supp. 3d 323 (S.D.N.Y. 2014), the Court held that the closure of a law firm's premises resulting from a power shutoff by Con Edison, the local New York City energy provider, in advance of Hurricane Sandy did not trigger business income or extra expense coverage because there was no physical damage to the insured's offices located at 40 Wall Street. The Court noted that "[t]he words 'direct' and 'physical,' which modify the phrase 'loss or damage,' ordinarily connote actual, demonstrable harm of some form to the premises itself, rather than forced closure of the premises for reasons exogenous to the premises themselves, or the adverse business consequences that flow from such closure." (*Id.* at 331; *see also, e.g., Port Auth. of N.Y. & N.J. v. Affiliated FM Ins. Co.*, 311 F.3d 226, 235 (3d Cir. 2002) ("In ordinary parlance and widely accepted definition, physical damage to property 'means a distinct, demonstrable, and physical alteration' of its structure."); *Mama Jo's, Inc. v. Sparta Ins. Co.*, No. 17-cv-23362-KMM, 2018 WL 3412974, at *9 (S.D. Fla. June

---

[3] In explaining why it was denying leave to amend, the Court stated: "…there actually is no factual development that could change the fact that the complaint is complaining about the loss of access or use of the premises due to executive orders and the COVID-19 virus crisis. So, there is no factual development that could possibly change that or amendment to the complaint that could change that those things do not constitute the direct physical damage or injury that is required under the policy…"

- 13 -

SQUIRE PATTON BOGGS (US) LLP
275 Battery Street, Suite 2600
San Francisco, California 94111

11, 2018) ("[D]irect physical loss 'contemplates an actual change in insured property then in a satisfactory state, occasioned by accident or other fortuitous event directly upon the property causing it to become unsatisfactory for future use or requiring that repairs be made to make it so.").) Business Income and Extra Expense claims under the Policy language at issue here are thus compensable only when the suspension of business was caused by a physical alteration to, or a demonstrable change to, the insured's property.

Here, the Complaint does not—and cannot—allege facts showing any indicia of property damage, nor does Plaintiff claim that COVID-19 caused any direct physical alteration or change constituting "direct physical loss of or damage to" Plaintiff's premises. Plaintiff alleges, implausibly, that viruses generally cause damage to property simply by their presence, which Plaintiff claims "mak[es] the property dangerous and less valuable," and quotes a 2006 industry group statement suggesting that viruses can sometimes contaminate property. But the Complaint does not allege that the coronavirus that causes COVID-19 was ever found at *Plaintiff's premises*, let alone that COVID-19 physically altered or changed Plaintiff's property.[4] Rather, the purported "damage" that Plaintiff alleges the virus caused was neither direct nor physical, but rather economic damage resulting from the shutdown of its business. (Complaint ¶ 39 ("COVID-19 damaged the 'Covered Property' by requiring it to be shut down.").) Thus, Plaintiff's

---

[4] Even if (contrary to fact and the Complaint) Plaintiff had specifically alleged the physical presence of coronavirus on property at Plaintiff's premises, that would still be insufficient to plead and prove direct physical loss or damage. According to CDC guidelines, "[c]oronaviruses on surfaces and objects naturally die within hours to days" and can be removed with "[n]ormal routine cleaning with soap and water" or killed with disinfectants. (*See* RJN E, *CDC Reopening Guidance for Cleaning and Disinfecting Public Spaces, Workplaces, Businesses, Schools, and Homes*, cdc.gov/coronavirus/2019-ncov/community/reopen-guidance.html (last visited June 17, 2020).) The fleeting presence of a virus that can survive on surfaces for only a few hours or days (*see* Complaint ¶ 34), and can be easily removed through ordinary cleaning or disinfectants, cannot cause physical loss or damage that would render property unusable or uninhabitable. (*See Mama Jo's*, 2018 WL 3412974, at *9 (finding no direct physical loss or damage and noting that "cleaning is not considered direct physical loss"); *Mastellone* v. *Lightning Rod Mut. Ins. Co.*, 884 N.E.2d 1130, 1144–45 (Ohio Ct. App. 2008) (holding that mold contamination that could be remediated through standard cleaning procedures was not "direct physical loss or damage"); *see also* RJN Ex. D, *Social Life Magazine, Inc.* v. *Sentinel Ins. Co. Ltd.*, No. 20 Civ. 3311 (VEC), Tr. at 4:25–5:4 (S.D.N.Y. May 14, 2020) (in denying preliminary injunction in property insurance action concerning alleged property damage caused by COVID-19, court stated: "There is no damage to your property. . . . [COVID-19] damages lungs. It doesn't damage printing presses.").)

- 14 -

SQUIRE PATTON BOGGS (US) LLP
275 Battery Street, Suite 2600
San Francisco, California 94111

SQUIRE PATTON BOGGS (US) LLP
275 Battery Street, Suite 2600
San Francisco, California 94111

allegation that its business operations were suspended as a result of the alleged presence of COVID-19 "in public places and businesses in Newport Beach and across the nation" (Complaint ¶ 43) fails to allege any "actual, demonstrable harm of some form" to property *at the insured's premises*, as required for coverage under the Policy. (*See, supra, Gavrilides Mgmt. Co.*, Case No. 20-258-CB-C30, at https://www.youtube.com/watch?v=Dsy4pA5NoPw&feature=youtu.be; *Newman Myers*, 17 F. Supp. 3d at 331.)

Because the Complaint does not allege any direct physical loss of or damage to Plaintiff's property, which is a necessary trigger for coverage under the Policy, Plaintiff's claims under the Business Income and Extra Expense Endorsement (Claims I and II) should be dismissed.

### b.   There Is No Business Income or Extra Expense Coverage Because There Has Been No "Period of Restoration"

The Business Income and Extra Expense Endorsement coverage that Plaintiff seeks is also limited to the "period of restoration." (Ex. A at 36-37.) This period "[b]egins with the date of *direct physical loss or damage*" and ends on the earlier of the "date when the property at the described premises should be *repaired, rebuilt or replaced* with reasonable speed and similar quality; or the date when business is resumed at a new permanent location." (*Id.* at 31 (emphases added).) That the coverage does not begin until the "direct physical loss or damage" occurs and ends when the property is "repaired, rebuilt or replaced" further confirms that, without direct physical loss or damage, there is no coverage at all. (*See Phila. Parking Auth. v. Fed. Ins. Co.*, 385 F. Supp. 2d 280, 288 (S.D.N.Y. 2005) (the terms "'rebuild,' 'repair,' and 'replace' all strongly suggest that the damage contemplated by the Policy is physical in nature"); *see also Newman Myers*, 17 F. Supp. 3d at 332 ("The words 'repair' and 'replace' contemplate physical damage to the insured premises.").) Here, the period of restoration has not begun because there has been no direct physical loss of or damage to Plaintiff's property.

The Complaint does not allege any physical damage to Plaintiff's premises requiring repair, rebuilding, or replacement. Aside from using the phrase in a handful of paragraphs (*see, e.g.,* Complaint ¶¶ 24, 73, 76), the Complaint does not even plead a "period of restoration" or

specify the repairs necessitated by any supposed property damage.  To the contrary, Plaintiff pleads that it (and putative class members) "took precautions; performed repairs; purchased equipment or other services due to COVD-19; or otherwise incurred expenses that were directly *due to the interruption or suspension of their businesses*"—not due to direct physical damage to their insured premises.  (Complaint ¶ 73 (emphasis added).)

> ### 2. Plaintiff's Civil Authority Claim Should Be Dismissed Because Plaintiff Has Not Alleged Facts Showing Direct Physical Loss of or Damage to Property at Another Location or That Access to its Premises Was Prohibited

Plaintiff also cannot recover under the Civil Authority Endorsement of the Policy because the Proclamation and the Executive Order were not issued due to "direct physical loss of or damage to property at locations, other than [O'Brien's] premises" and did not prohibit access to O'Brien's premises.  (*See* Ex. A at 62; *see also* generally 10A Couch on Insurance § 152:22.)

As a threshold matter, to trigger coverage under the Policy, the civil authority action must have been due to direct physical loss of or damage to property at a location other than the insured premises. (Ex. A at 62.)  Neither the Proclamation nor the Executive Order makes *any* reference to direct physical loss of or damage to property at *any* location.  (*See* Exs. B & C.)  Rather, the stated purpose of both measures was to provide health care for people infected by the virus and to protect others from infection.  (*Id.*)  Indeed, Plaintiff admits that the Proclamation and the Executive Order "were issued due to the 'community spread' of COVID-19"—that is, to prevent and treat infection.  (Complaint ¶ 43.)  Because the civil authority orders on which Plaintiff relies—the Proclamation and the Executive Order (including the Public Health Order incorporated therein)—were addressed to public health, not direct physical loss of or damage to property at a location other than Plaintiff's premises, the Civil Authority Endorsement does not apply.

For a civil authority claim to succeed, the civil authority action also must expressly prohibit access to Plaintiff's premises, which unambiguously means a complete bar to entry.  (*S. Hospitality, Inc. v. Zurich Am, Ins. Co.*, 393 F.3d 1137, 1140–41 (10th Cir. 2004) (citing cases from various states); Ex. A at 62 (requiring that the civil authority action "prohibit[] access to the

- 16 -

SQUIRE PATTON BOGGS (US) LLP
275 Battery Street, Suite 2600
San Francisco, California 94111

described premises"); *see also Syufy Enters. v. Home Ins. Co.*, No. 94-0756 FMS, 1995 U.S. Dist. LEXIS 3771 *5 (N.D. Cal. 1995) (the "civil authority must specifically deny access to [the insured's premises].  Here, no civil authority ever specifically prohibited any individual from entering [the insured's premises]."); *Tu v. Dongbu Ins. Co.*, 2018 U.S. Dist. LEXIS 151322 *26-27 (N.D. Cal. 2018) (coverage would apply if "a covered cause of loss caused damage to the street in front of the [insured premises], and a civil authority closed the [insured premises] because of that damage.").)  Neither the Proclamation nor the Executive Order contains any provision prohibiting access to Plaintiff's premises.

It is not enough that the civil authority order merely hampered or discouraged access to the insured's premises.  (*See Ski Shawnee, Inc. v. Commonwealth Ins. Co.*, No. 3:09-CV-02391, 2010 WL 2696782, at *1, *5 (M.D. Pa. July 6, 2010) (no coverage when order closed main road that 70 percent—but not 100 percent—of patrons used to access ski resort); *Kean, Miller, Hawthorne, D'Armond McCowan & Jarman, LLP v. Nat'l Fire Ins. Co. of Hartford*, No. 06-770-C, 2007 WL 2489711, at *6 (M.D. La. Aug. 29, 2007) (claim failed when plaintiff closed its office to comply with advisories recommending that residents remain home after hurricane despite no orders forbidding or blocking access to premises); *Abner, Herrman & Brock, Inc. v. Great Northern Ins. Co.*, 308 F. Supp. 2d 331, 335–36 (S.D.N.Y. 2004) (after full prohibition of access lifted, plaintiff had no civil authority claim even though traffic restrictions continued to hamper access to premises).)  Nor is it sufficient that a civil authority's closure of other businesses causes a loss of income to the insured; the civil authority must prohibit access to the *insured's* premises specifically.  (*S. Hospitality*, 393 F.3d at 1140–41 (no recovery after 9/11 for hotel operator because, although FAA's order grounding planes greatly depressed hotels' business, it did not close hotels).)  That the stay-at-home direction in the Executive Order may have lost Plaintiff business or hampered its employees from coming to work is thus not sufficient to invoke coverage under the Civil Authority Endorsement.

This District Court, in *Syufy Enterprises*, *supra*, 1995 U.S. Dist. LEXIS 3771 [1995 WL 129229], denied a business interruption claim by a movie theater operator that had suspended its

SQUIRE PATTON BOGGS (US) LLP
275 Battery Street, Suite 2600
San Francisco, California 94111

SQUIRE PATTON BOGGS (US) LLP
275 Battery Street, Suite 2600
San Francisco, California 94111

business operations when, following the Rodney King verdict, civil authorities in several large cities imposed a dawn-to-dusk curfew to quell potential rioting and looting.  The policy in question covered business income loss where "as a direct result of damage to or destruction of property adjacent to the premises herein described by the peril(s) insured against, access to such described premises is specifically prohibited by order of civil authority."  (*Id.* at \*2.)  The court held that the civil authority provision was not triggered for two reasons: first, no order ever "specifically prohibited any individual from entering a theater," and second, the policy required that the civil authority order must be "a direct result of damage to or destruction of property adjacent" to the insured's property, not a curfew imposed to prevent future rioting and property damage.  (*Id.*, at \*5 (emphases in original).)

Civil Authority coverage does not apply here for the same reasons as in *Syufy Enterprises*. However Plaintiff may mischaracterize them, the fact remains that on their face the orders have nothing to do with physical loss of or damage to property and do not  prohibit access to Plaintiff's (or any other) premises.  The Proclamation simply states how the State will prepare for and treat individuals stricken with COVID-19 and prevent the transmission of the coronavirus from person to person.  The Executive Order directs all California residents, other than critical infrastructure workers, to stay at home as much as possible, and to practice social distancing when they must go out for necessities such as food, prescriptions, and health care.  (*See* Ex. C at 2 (permitting all Californians working in 16 critical infrastructures to continue working "because of the importance of these sectors to Californian's health and well-being" and directing others to "practice social distancing" when they need to leave their homes).)  Neither prohibits access to *any* premises, let alone Plaintiff's premises in particular.  While the Proclamation or the Executive Order might have reduced Plaintiff's revenue by reducing the demand for its services, a loss of profits from reduced work volume is not compensable under a civil authority provision.  (*See United Air Lines v. Ins. Co. of the State of Pa.*, 439 F.3d 128, 134–35 (2d Cir. 2006); *Ski Shawnee*, 2010 WL 2696782, at \*5.)

SQUIRE PATTON BOGGS (US) LLP
275 Battery Street, Suite 2600
San Francisco, California 94111

1    Under a plain reading of the Policy, and consistent with established authority, Plaintiff has

2    no claim under the Civil Authority Endorsement, and the Complaint should be dismissed.

3    **3.    Because Plaintiff Has Not Alleged a Claim within the Policy's Grant of Coverage, the Purported Absence of a Virus Exclusion Is Irrelevant.**

4

5    The Complaint alleges that Plaintiff is entitled to coverage under the Policy because "'All

6    risk' policies cover all damage from all sources unless it is specifically excluded," and Plaintiff's

7    Policy contains "no exclusion or limit for damages from viruses." (Complaint ¶ 19.)  But Plaintiff

8    has it backwards: it is the insured's burden to show that the alleged loss falls within the policy's

9    grant of coverage before exclusions even become relevant.  (*See Aydin Corp.*, 18 Cal. 4th at 1188;

10   *Gov't Empls. Ins. Co.*, 391 F. Supp. 3d at 925.)  Plaintiff cannot carry that burden here because,

11   as shown above, the trigger for coverage is "direct physical loss of or damage to" the insured's

12   premises (for the Business Income and Extra Expense coverage) or other premises (for Civil

13   Authority coverage).  (*See* Sections II.B.1-2.) The insured must meet these threshold

14   requirements to trigger coverage before there is any need to inquire whether there is an applicable

15   exclusion.  Plaintiff's focus on the virus exclusion misses the mark for an additional reason: the

16   Policy does contain an exclusion for loss or damage caused by the "[p]resence, growth,

17   proliferation, spread or any activity of … 'microbes.'" (Ex. A at 98.)  The Policy defines

18   microbes as "any non-fungal micro-organism or non-fungal, colony-form organism *that causes*

19   *infection or disease*." (*Id.* at 99 (emphasis added).)  Because a virus is a non-fungal micro-

20   organism that causes infection or disease, coverage is excluded under the Policy, even if

21   Plaintiff's claim could meet the physical loss or damage trigger.  (*See* CDC, Vaccines &

22   Immunizations: Glossary, *at* https://www.cdc.gov/vaccines/terms/glossary.html (defining

23   "microbes" as "[t]iny organisms (*including viruses* and bacteria) that can only be seen with a

24   microscope") (emphasis added).)  But the Court need not address the scope of that or other

25   applicable exclusions on this motion, because Plaintiff has failed to allege a loss that falls within

26   any grant of coverage under the Policy.

27

28

1

### III.    CONCLUSION

2
       For all the reasons stated above, Plaintiff has failed to state any claim upon which relief

3
can be granted.  These are not mere pleading deficiencies; Plaintiff's alleged business interruption

4
losses from the COVID-19 pandemic simply do not trigger coverage under the Policy.

5
Accordingly, further amendment would be futile, and TIC respectfully requests that the Court

6
dismiss the Complaint with prejudice under Rule 12(b)(6).  (*Gardner v. Martino*, 563 F.3d 981,

7
990 (9th Cir. 2009) (no abuse of discretion in denying leave to amend when amendment would be

8
futile).)

9
Dated:  July 7, 2020                                    Squire Patton Boggs (US) LLP

10

11
                                                        By: */s/ G. David Godwin*

12
                                                            G. David Godwin

13
                                                        Attorneys for Defendant Transportation
                                                        Insurance Company

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

SQUIRE PATTON BOGGS (US) LLP
275 Battery Street, Suite 2600
San Francisco, California 94111

DEFENDANT'S MOTION TO DISMISS
20-cv-002951-MMC