Squire Patton Boggs (US) LLP
G. David Godwin, State Bar No. 148272
david.godwin@squirepb.com
Eric J. Knapp, State Bar No. 214352
eric.knapp@squirepb.com
Thomas J. Lloyd, State Bar No. 305507
thomas.lloyd@squirepb.com
275 Battery Street, Suite 2600
San Francisco, California 94111
Telephone:     +1 415 954 0200
Facsimile:     +1 415 393 9887

Attorneys for Defendant Transportation Insurance
Company

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| O'BRIEN SALES AND MARKETING, INC., on behalf of itself and other similarly situated,<br><br>Plaintiff,<br><br>V.<br><br>TRANSPORTATION INSURANCE COMPANY,<br><br>Defendant. | Case No. 20-cv-02951-MMC<br><br>DEFENDANT TRANSPORTATION INSURANCE COMPANY'S NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT<br><br>Judge:  Hon. Maxine M. Chesney<br>Date:    October 9, 2020<br>Time:    9:00 a.m.<br>Crtrm:  7<br><br>Action Filed:  April 29, 2020<br><br>ORAL ARGUMENT REQUESTED |

SQUIRE PATTON BOGGS (US) LLP
275 Battery Street, Suite 2600
San Francisco, California 94111

SQUIRE PATTON BOGGS (US) LLP
275 Battery Street, Suite 2600
San Francisco, California 94111

## NOTICE OF MOTION AND MOTION TO DISMISS

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

NOTICE IS HEREBY GIVEN that on October 9, 2020 at 9:00 a.m. or as soon thereafter as counsel may be heard, before the Honorable Maxine M. Chesney, in Courtroom 7 of the United States Courthouse, located at 450 Golden Gate Avenue, San Francisco, California, Defendant Transportation Insurance Company ("Defendant" or "TIC") will and hereby does move the Court to dismiss Plaintiff O'Brien Sales & Marketing, Inc.'s ("Plaintiff" or "O'Brien") First Amended Complaint ("FAC") [Dkt. 21].

Defendant's Motion seeks an order dismissing the FAC pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure on the ground that the FAC fails to state a claim upon which relief can be granted. Defendant's Motion is based on this Notice of Motion and Motion, the Memorandum of Points and Authorities contained herein, the accompanying Declaration of Jason Deitzel, the accompanying Request for Judicial Notice, any reply papers that may be submitted, on the arguments of counsel at any hearing that may be held, all of the pleadings, files and records in this proceeding, and any other such matters as the Court may consider at the time of the hearing on the motion.

Dated:  August 18, 2020

Respectfully submitted,

Squire Patton Boggs (US) LLP

By: */s/ G. David Godwin*
    G. David Godwin

Attorneys for Defendant
Transportation Insurance Company

- ii -

# TABLE OF CONTENTS

**STATEMENT OF ISSUES TO BE DECIDED**.................................................................. 1

**PRELIMINARY STATEMENT** ....................................................................................... 1

I.     STATEMENT OF FACTS ....................................................................................... 2

    A.    The Parties ................................................................................................ 3

    B.    Plaintiff's Alleged Business Losses and the Shelter-In-Place Orders.............................. 3

    C.    The Policy................................................................................................. 5

    D.    Plaintiff's Insurance Claim and This Lawsuit .................................................. 7

II.    ARGUMENT .......................................................................................................... 8

    A.    Legal Standard........................................................................................... 8

    B.    All of Plaintiff's Claims Must Be Dismissed Because The Policy Does Not Provide Coverage for Plaintiff's Alleged Losses ...................................................... 10

        1.    Plaintiff's Claims Should Be Dismissed Because Plaintiff Did Not Suffer Direct Physical Loss of or Damage to Property as Required Under the Business Income and Extra Expense Endorsement ................................................................... 11

        2.    Plaintiff's Civil Authority Claim Should Be Dismissed Because Plaintiff Has Not Alleged Facts Showing Direct Physical Loss of or Damage to Property at Another Location or That Access to its Premises Was Prohibited As a Result .................................... 17

        3.    Because Plaintiff Has Not Alleged a Claim within the Policy's Grant of Coverage, the Purported Absence of a Virus Exclusion Is Irrelevant.......................................... 20

    C.    Plaintiff's Declaratory Relief Claims Must also Be Dismissed Because They Are Entirely Duplicative of Its Individual Breach of Contract Claim ............................. 21

III.    Conclusion ........................................................................................................ 22

SQUIRE PATTON BOGGS (US) LLP

275 Battery Street, Suite 2600

San Francisco, California 94111

DEFENDANT'S MOTION TO DISMISS FAC

20-cv-002951-MMC

**Page(s)**

**Cases**

*Abner, Herrman & Brock, Inc. v. Great Northern Ins. Co.*,
308 F. Supp. 2d 331 (S.D.N.Y. 2004) ........................................................ 19

*AIU Ins. Co. v. Superior Court (FMC Corporation)*,
51 Cal. 3d 807 (Cal. 1990) ................................................................. 10, 11

*Am. W. Door & Trim v. Arch Specialty Ins. Co.*,
2015 U.S. Dist. LEXIS 34589 (C.D. Cal. Mar. 18, 2015) ........................ 9

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ............................................................................... 9

*Aydin Corp. v. First State Ins. Co.*,
18 Cal. 4th 1183, 77 Cal. Rptr. 2d 537 (Cal. 1998) .......................... 10, 20

*Balistreri v. Pacifica Police Dep't*,
901 F.2d 696 (9th Cir. 1990) ................................................................. 8

*Bank of the West v. Superior Court*,
2 Cal.4th 1254, 10 Cal. Rptr. 2d 538 (Cal. Ct. App. 1992) .................... 10

*Bell Atlantic Corp. v. Twombly*,
550 U.S. 544 (2007) ............................................................................... 9

*Bristol-Myers Squibb Co. v. Superior Court of California*,
137 S. Ct. 1773 (2017) .......................................................................... 9

*Butta v. GEICO Cas. Co.*
400 F. Supp. 3d 225 (E.D. Pa. 2019) ..................................................... 22

*Carpenter v. PetSmart, Inc.*,
2020 U.S. Dist. LEXIS 35459 (S.D. Cal. Mar. 2, 2020) ........................ 9

*Corcoran v. CVS Health Corp.*,
169 F. Supp. 3d 970 (N.D. Cal. 2016) .................................................... 9

*Diesel Barbership, LLC et al. v. State Farm Lloyds*,
No. 5:20-CV-461-DAE 2020 U.S. Dist. LEXIS 147276 (W.D. Tex. Aug. 13,
2020) ................................................................................................. 15, 16

*Essex Marina City Club, L.P. v. Cont'l Cas. Co.*,
No. 11-408 SC, 2011 U.S. Dist. LEXIS 49512 (N.D. Cal. May 9, 2011) ....... 21, 22

DEFENDANT'S MOTION TO DISMISS FAC
20-cv-002951-MMC

SQUIRE PATTON BOGGS (US) LLP
275 Battery Street, Suite 2600
San Francisco, California 94111

*Gardner v. Martino*,
    563 F.3d 981 (9th Cir. 2009) .................................................................................... 22

*Gavrilides Mgmt. Co.* v. *Michigan Ins. Co.*,
    No. 20-258-CB-C30 (Ingham County), 2020 Mich. Cir. LEXIS 395 (Mich.
    Cir. Ct. July 1, 2020) ............................................................................... 13, 14, 16

*Gov't Empls. Ins. Co. v. Nadkarni*,
    391 F. Supp. 3d 917 (N.D. Cal. 2019) ............................................................. 10, 20

*Hotchalk, Inc. v. Scottsdale Ins. Co.*,
    217 F. Supp. 3d 1058 (N.D. Cal. 2016) .................................................................. 11

*Ins. Co. of N. Am. v. Fed. Exp. Corp.*,
    189 F.3d 914 (9th Cir. 1999) .................................................................................. 10

*Kean, Miller, Hawthorne, D'Armond McCowan & Jarman, LLP v. Nat'l Fire Ins.
    Co. of Hartford*,
    No. 06-770-C, 2007 WL 2489711 (M.D. La. Aug. 29, 2007) ................................. 18

*Mama Jo's, Inc. v. Sparta Ins. Co.*,
    No. 17-cv-23362-KMM, 2018 WL 3412974 (S.D. Fla. June 11, 2018) .............. 13, 16

*Mastellone* v. *Lightning Rod Mut. Ins. Co.*,
    884 N.E.2d 1130 (Ohio Ct. App. 2008) .................................................................. 16

*Meridian Textiles, Inc. v. Indem. Ins. Co.*,
    No. CV 06-4766 CAS, 2008 U.S. Dist. LEXIS 91371 (C.D. Cal. Mar. 20,
    2008) ...................................................................................................................... 12

*MRI Healthcare Ctr. of Glendale, Inc. v. State Farm Gen. Ins. Co.*,
    187 Cal. App. 4th 766, 115 Cal. Rptr. 3d 27 (Cal. Ct. App. 2010) ......................... 12

*Newman Myers Kreines Gross, P.C. v. Great N. Ins. Co.*,
    17 F. Supp. 3d 323 (S.D.N.Y. 2014) ......................................................... 13, 16, 17

*Parducci v. Overland Sols.*,
    399 F. Supp. 3d 969 (N.D. Cal. 2019) ...................................................................... 2

*Phila. Parking Auth. v. Fed. Ins. Co.*,
    385 F. Supp. 2d 280 (S.D.N.Y. 2005) ..................................................................... 17

*Port Auth. of N.Y. & N.J. v. Affiliated FM Ins. Co.*,
    311 F.3d 226 (3d Cir. 2002) ................................................................................... 13

*Rose's 1, LLC v. Erie Insurance Exchange*,
    No. 2020 CA 002424, 2020 D.C. Super. LEXIS 10 (D.C. Super. Ct. Aug. 6,
    2020) ...................................................................................................................... 14

*Sheahan v. State Farm Gen. Ins. Co.*,
 394 F. Supp. 3d 997 (N.D. Cal. 2019) ............................................................. 11

*Ski Shawnee, Inc. v. Commonwealth Ins. Co.*,
 No. 3:09-CV-02391, 2010 WL 2696782 (M.D. Pa. July 6, 2010) ................... 18, 20

*Social Life Magazine, Inc.* v. *Sentinel Ins. Co. Ltd.*,
 No. 20 Civ. 3311 (VEC) ............................................................................ 16

*Solarcity Corp. v. Sunpower Corp.*,
 No. 16-CV-05509-LHK, 2017 U.S. Dist. LEXIS 68639 (N.D. Cal. May 4,
 2017) ....................................................................................................... 21

*Studio 417 Inc. et al. v. The Cincinnati Insurance Co.*,
 No. 6:20-cv-03127, 2020 U.S. Dist. LEXIS 147600 (W.D. Mo. Aug. 12, 2020) ................. 15

*Syufy Enters. v. Home Ins. Co.*,
 No. 94-0756 FMS, 1995 U.S. Dist. LEXIS 3771 (N.D. Cal. 1995) .............................. 18, 19

*Tarakanov v. Lexington Ins. Co.*,
 2020 U.S. Dist. LEXIS 40903, __ F. Supp. 3d ___ (N.D. Cal. 2020) .................... 11

*Ticor Title Ins. Co. v. Employers Ins. of Wausau*,
 40 Cal. App. 4th 1699, 48 Cal. Rptr. 2d 368 (Cal. Ct. App. 1995)........................... 10

*Travelers Cas. & Sur. Co. v. Transcon. Ins. Co.*,
 122 Cal. App. 4th 949, 19 Cal. Rptr. 3d 272 (Cal. Ct. App. 2004)........................ 10

*Tu v. Dongbu Ins. Co.*,
 No. 17-cv-03495-JSC, 2018 U.S. Dist. LEXIS 151322 (N.D. Cal. 2018) ........... 18

*United Air Lines v. Ins. Co. of the State of Pa.*,
 439 F.3d 128 (2d Cir. 2006)....................................................................... 20

*Ward Gen. Ins. Servs., Inc. v. Emp'rs Fire Ins. Co.*,
 114 Cal. App. 4th 548, 7 Cal. Rptr. 3d 844 (Cal. Ct. App. 2003).................. 11, 12

*Zaghi v. State Farm Gen. Ins. Co.*,
 77 F. Supp. 3d 974 (N.D. Cal. 2015) ............................................................. 10

**Statutes**

22 U.S.C. § 2201 ............................................................................................ 21

Cal. Civ. Code § 1638 ................................................................................... 10

Cal. Civ. Code § 1646 ................................................................................... 10

Cal. Gov. Code § 8558(b) .............................................................................. 4

SQUIRE PATTON BOGGS (US) LLP
275 Battery Street, Suite 2600
San Francisco, California 94111

DEFENDANT'S MOTION TO DISMISS FAC
20-cv-002951-MMC

**Other Authorities**

Federal Rules of Civil Procedure Rule 12(b)(1) .............................................................. 9

Federal Rules of Civil Procedure Rule 12(b)(6) ...................................................... 1, 8, 22

DEFENDANT'S MOTION TO DISMISS FAC
20-cv-002951-MMC

SQUIRE PATTON BOGGS (US) LLP
275 Battery Street, Suite 2600
San Francisco, California 94111

SQUIRE PATTON BOGGS (US) LLP
275 Battery Street, Suite 2600
San Francisco, California 94111

## **MEMORANDUM OF POINTS AND AUTHORITIES**

TIC respectfully submits the following memorandum of points and authorities in support of its motion to dismiss with prejudice all claims asserted against it in Plaintiff's FAC pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

### **STATEMENT OF ISSUES TO BE DECIDED**

1.     Whether Plaintiff's claim for breach of contract should be dismissed with prejudice on the ground that the terms of the policy issued by TIC to Plaintiff do not provide Business Income, Extra Expense, and/or Civil Authority coverage for Plaintiff's alleged loss.

2.     Whether Plaintiff's claims for declaratory judgment should be dismissed with prejudice on the ground that the terms of the policy issued by TIC to Plaintiff do not provide Business Income, Extra Expense, and/or Civil Authority coverage for Plaintiff's alleged loss.

3.     Whether Plaintiff's claims for declaratory judgment should be dismissed as duplicative of Plaintiff's breach of contract claim.

### **PRELIMINARY STATEMENT**

This is an insurance coverage action arising out of the COVID-19 pandemic.  Plaintiff, a marketing agency in Newport Beach, California, alleges that its property insurance policy with TIC provides coverage for business interruption losses purportedly incurred as a result of COVID-19.  On behalf of putative classes of TIC insureds, Plaintiff asserts three claims, each seeking a declaration of coverage under one of three provisions of its policy:  those affording Business Income, Extra Expense, and Civil Authority coverage respectively.  The FAC also asserts an individual claim against TIC for breach of contract based on the same grounds alleged in the three declaratory relief claims.  Plaintiff alleges that TIC issued blanket denials for all COVID-19 claims, including Plaintiff's claim and the claims of putative class members nationwide, regardless of their merits.  But the threshold question on this motion is whether *Plaintiff's* policy affords coverage for *its* alleged loss.  It does not.  Although the global COVID-19 pandemic has disrupted businesses around the world, the unambiguous terms of Plaintiff's policy do not provide coverage for Plaintiff's alleged losses.

SQUIRE PATTON BOGGS (US) LLP
275 Battery Street, Suite 2600
San Francisco, California 94111

*First*, Plaintiff's claims for Business Income and Extra Expense coverage fail because the plain language of the policy provides that such coverage applies *only* when the suspension of Plaintiff's operations is caused by "direct physical loss of or damage to" property at the insured's premises. The FAC does not plausibly allege that O'Brien's property suffered *any* direct physical loss or damage. Without any direct physical loss of or damage to Plaintiff's property, coverage under the Policy is not triggered, and no recovery is available.

*Second*, Plaintiff's claims for Civil Authority coverage fails because the FAC does not plead either of the two prerequisites for coverage: the orders relied upon in the FAC—Governor Newsom's March 4, 2020 Proclamation of a State of Emergency (the "Proclamation") and his March 19, 2020 Executive Order N-33-20 (the "Executive Order")—were not enacted because of direct physical loss of or damage to property at another location, and they did not prohibit access to Plaintiff's premises. To the contrary, the Proclamation and the Executive Order were issued to facilitate the treatment of people infected with the virus and to limit person-to-person contact "to bend the curve" and "disrupt the spread" of contagion. Moreover, neither the Proclamation nor the Executive Order restricts access to Plaintiff's premises.

For all these reasons, as set forth more fully below, Plaintiff is not entitled to coverage under the policy. Because the FAC fails to state a claim upon which relief can be granted, the FAC should be dismissed with prejudice. Plaintiff's declaratory relief claims should also be dismissed as entirely duplicative of its breach of contract claim.

## I.  STATEMENT OF FACTS

The facts alleged or incorporated by reference in the Complaint, or of which the Court may take judicial notice on this motion,[1] are summarized below.

_____

[1] TIC respectfully requests that the Court take judicial notice ("RJN") of Plaintiff's insurance policy with TIC (Ex. A), and the Proclamation and the Executive Order (Exs. B and C). On a motion to dismiss, the Court may consider documents referenced in the complaint but not attached to it so long as the documents are referred to by the complaint, are central to the allegations, and are of unquestioned authenticity. (*Parducci v. Overland Sols.*, 399 F. Supp. 3d 969, 979 n.2 (N.D. Cal. 2019) (relying on underlying insurance policy attached to motion to dismiss in granting the motion).) Here, there can be no question as to the authenticity of these documents, and Plaintiff's policy is repeatedly referenced in the FAC and central to the allegations—indeed, it is the source of the purported right to coverage that Plaintiff seeks to have declared—and the Proclamation and the Executive Order are likewise referred to in the

DEFENDANT'S MOTION TO DISMISS FAC
20-cv-002951-MMC

SQUIRE PATTON BOGGS (US) LLP
275 Battery Street, Suite 2600
San Francisco, California 94111

### A. The Parties

Plaintiff is a marketing agency located in Newport Beach, California. (FAC. ¶ 13.) Defendant is an insurance company incorporated under the laws of Illinois, with its principal place of business in Chicago, Illinois. Defendant issues insurance policies to policyholders in California and other states. (*Id.* at ¶ 14.)

### B. Plaintiff's Alleged Business Losses and the Shelter-In-Place Orders

Plaintiff alleges its business was suspended "by the presence of the virus that causes COVID-19," and "Plaintiff was required to take measures to prevent further interruption and damage." (*Id.* at ¶ 8.) Although the Complaint alleges in conclusory terms that Plaintiff's "business, and its premises, were physically damaged by the presence of the virus that causes COVID-19" (*id.*), it does not allege any *facts* from which that conclusory statement could plausibly be inferred. The Complaint does *not* allege that the virus that causes COVID-19 was *present at the insured's premises,* or even that any employee or client of O'Brien was diagnosed with COVID-19.

In support of its claim for coverage under the Civil Authority endorsement, Plaintiff further alleges that "[t]he Governor of California issued Executive Orders, including Executive Order N-33-20, that limit[ed] or reduce[d] the normal business operations of business in Plaintiff's community." (*Id.* at ¶ 41.) The relevant orders are the Proclamation and the Executive Order.

On March 4, 2020, the Governor of the State of California signed the Proclamation, which states that the State of California has taken various actions to monitor and plan for the potential spread of COVID-19, preserve public health, and provide guidance to health care facilities and providers. (RJN Ex. B.) It further notes that, as of March 4, 2020, there were 53 confirmed cases of COVID-19 in California, with more cases expected. (*Id.*) The Proclamation recognizes that, while California has a robust pandemic influenza plan and a strong health care delivery system, "it is imperative to prepare for and respond to suspected or confirmed COVID-19 cases in

Complaint and central to Plaintiff's claims under the Civil Authority endorsement. (FAC ¶¶ 15 and 41.)

DEFENDANT'S MOTION TO DISMISS FAC
20-cv-002951-MMC

California, to implement measures to mitigate the spread of COVID-19, and to prepare to respond to an increasing number of individuals requiring medical care and hospitalization ….” (*Id.*)  The Order set forth in the Proclamation contains 14 items, none of which makes any mention of physical loss of or damage to property.  (*Id.*)  Rather, the Order is focused on making available all resources to treat patients afflicted with COVID-19.  (*Id.*)

On March 19, 2020, Governor Newsom issued the Executive Order, which requires all residents living in the State of California to stay at home.  (RJN Ex. C.)  The stated purpose of the Executive Order is: “To preserve the public health and safety, and to ensure the healthcare delivery system is capable of serving all, and prioritizing those at the highest risk and vulnerability ….”  (*Id.* at 1.)  The Order of the State Public Health Officer, also dated March 19, 2020 (the “Public Health Order”), is made part of the Executive Order and expressly states: “This Order is being issued to protect the public health of Californians.  The California Department of Public Health looks to establish consistency across the state in order to ensure that we mitigate the impact of COVID-19.  Our goal is simple, we want to bend the curve, and disrupt the spread of the virus.” (*Id.* at 2.)  Neither the Executive Order nor the Public Health Order mentions physical loss of or damage to property.

Plaintiff contends that the Proclamation requires a finding of the existence of the circumstances described in Government Code Section 8558(b), which includes “‘conditions of disaster or of extreme peril to the safety of persons and property’ caused by conditions such as epidemics,” and that the Executive Order “is premised on a finding by the Governor of extreme peril to property as a result of the epidemic.” (FAC ¶ 41.)  But that contention is belied by the orders themselves:  neither the Proclamation nor the Executive Order makes any reference to peril to property.  Rather, the stated purpose of both measures is to promote effective care for people infected by the virus and to protect others from infection by stemming its spread.

DEFENDANT'S MOTION TO DISMISS FAC
20-cv-002951-MMC

**C. The Policy**

Plaintiff purchased from TIC a CNA Connect Policy, Policy No. B 5094898147, for the period December 17, 2019 to December 17, 2020 (the "Policy"). (FAC ¶ 15; Ex. A at 5.)[2] The Policy provides both first-party property coverage and liability coverage. The property coverage, as set forth in the Businessowners Special Property Coverage Form (Form SB-146801-1), and its incorporated Declarations, Endorsements, and Exclusions, is relevant to Plaintiff's claims here. (*See* FAC ¶¶ 4-7, 15.) Specifically, Plaintiff alleges that the Policy includes two endorsements that provide compensation for Plaintiff's alleged loss of business income: the "Business Income and Extra Expense" endorsement and the "Civil Authority" endorsement. (*Id.* at ¶ 16.) The trigger for coverage under each of these provisions is "direct physical loss of or damage to property" at the insured's premises (for the Business Income and Extra Expense coverage) or other premises (for Civil Authority coverage).

*First*, Business Income coverage, as set forth in the Business Income and Extra Expense Endorsement, allows Plaintiff to recover business income lost as a result of the suspension of its operations caused by "direct physical loss of or damage to property" at Plaintiff's premises resulting from a cause of loss insured under the Policy. The relevant term of the Policy provides:

> **1. Business Income**
>
> **…**
>
> **b.** We will pay for the actual loss of Business Income you sustain due to the necessary "suspension" of your "operations" during the "period of restoration." The "suspension" must be caused by direct physical loss of or damage to property at the described premises. The loss or damage must be caused by or result from a Covered Cause of Loss.

(Ex. A at 36.) "Suspension" means the "partial or complete cessation of your [the insured's] business activities" (*id.* at 33), and "operations" means "the type of your [the insured's] business activities occurring at the described premises and tenantability of the described premises" (*id.* at 31). A "Covered Cause of Loss" means "RISKS OF DIRECT PHYSICAL LOSS" unless

---

[2] References to page numbers for Exhibits are to the document control numbers applied at the top right of each document.

SQUIRE PATTON BOGGS (US) LLP
275 Battery Street, Suite 2600
San Francisco, California 94111

excluded or limited under the Policy. (*Id.* at 15-16.) Plaintiff alleges that it experienced a "suspension" of its business "by the presence of the virus and Plaintiff was required to take measures to prevent further interruption and damage." (FAC ¶ 8.) Plaintiff further asserts that the "presence of COVID-19 caused 'direct physical loss of or damage to' each 'Covered Property' by requiring it to be shut down," but does not specify the nature of such alleged damage, nor explain how being required to "shut down" could cause "direct physical loss of or damage to" its property. (*Id.* ¶ 39.) In addition, the FAC pleads generally that the "presence of virus particles alone is enough to make the property dangerous or less valuable," but does not plead that the virus was present on its property. (*Id.* ¶ 32; *see also id.* ¶ 8.)

*Second*, Extra Expense coverage allows Plaintiff to recover reasonable and necessary expenses incurred during the "period of restoration" that would not have been incurred if there had been no direct physical loss of or damage to the insured's property from a covered cause of loss. The relevant term of the Policy provides:

> **2. Extra Expense**
>
> **a.** Extra Expense means reasonable and necessary expenses you incur during the "period of restoration" that you would not have incurred if there had been no direct physical loss of or damage to property caused by or resulting from a Covered Cause of Loss.
>
> **b.** We will pay Extra Expense (other than the expense to repair or replace property) to:
>
> **(1)** Avoid or minimize the "suspension" of business and to continue "operations" at the described premises or at replacement premises or temporary locations, including relocation expenses and costs to equip and operate the replacement premises or temporary locations; or
>
> **(2)** Minimize the "suspension" of business if you cannot continue "operations."

(Ex. A at 37.) Plaintiff alleges that it is entitled to coverage for Extra Expense "because Plaintiff and Class Members paid or incurred costs in a period of restoration of the Covered Property … due to COVID-19; or otherwise incurred expenses that were directly due to the interruption or suspension of their businesses." (FAC ¶ 77.) Under the Policy, the "period of restoration" means the date that "[b]egins with the date of direct physical loss or damage caused by or resulting from

any Covered Cause of Loss at the described premises; and [e]nds on the earlier of: (1) The date when the property at the described premises should be repaired, rebuilt or replaced with reasonable speed and similar quality; or (2) The date when business is resumed at a new permanent location." (Ex. A at 31.)

*Third*, Civil Authority coverage allows Plaintiff to recover its lost Business Income and Extra Expense when a civil authority—i.e., a government entity—prohibits access to Plaintiff's premises (here, Plaintiff's office suite) because of "direct physical loss of or damage to" property at locations *other than* the insured's premises caused by a Covered Cause of Loss. This coverage would, for example, cover business interruption if a government entity prohibited access to the insured's premises as a result of a fire in a building across the street from the premises. The relevant terms of the Policy provide:

**Civil Authority**

> **1.** When the Declarations show that you have coverage for Business Income and Extra Expense, you may extend that insurance to apply to the actual loss of Business Income you sustain and reasonable and necessary Extra Expense you incur caused by action of civil authority that prohibits access to the described premises. The civil authority action must be due to direct physical loss of or damage to property at locations, other than described premises, caused by or resulting from a Covered Cause of Loss.

(Ex. A at 62.) Plaintiff alleges that the Executive Order closed and suspended "business operations due to the physical presence of the virus that causes COVID-19 in close proximity to the Covered Property," but does not allege any facts showing that the virus was "in close proximity" or that it caused physical loss of or damage to property at some other premises. (FAC ¶ 85.)

**D. Plaintiff's Insurance Claim and This Lawsuit**

Plaintiff alleges it "tendered claims" to TIC for Business Income, Extra Expense and Civil Authority coverage related to the virus that causes COVID-19. (*Id.* at ¶¶ 10, 47.) Plaintiff fails to allege any facts concerning when it submitted a claim, whether it reported any suspension of business operations, the reason for such a suspension (if any), or whether it identified any direct physical loss of or damage to its property. Plaintiff also fails to allege when TIC responded to its

SQUIRE PATTON BOGGS (US) LLP
275 Battery Street, Suite 2600
San Francisco, California 94111

SQUIRE PATTON BOGGS (US) LLP
275 Battery Street, Suite 2600
San Francisco, California 94111

1    claim and the contents of that response. Rather, Plaintiff contends that TIC denied all claims

2    nationwide "en masse." (*Id.* at ¶¶ 10, 70, 78 and 86.)

3         On April 29, 2020, Plaintiff filed its original complaint in this action [Dkt. 1], asserting

4    declaratory relief claims on behalf of a putative nationwide class of all TIC policyholders, without

5    regard for, among other things, the terms and conditions of the insured's particular policy, its

6    business type, its geographic location, or the facts and circumstances of any alleged loss.

7    (Complaint ¶¶ 48–51, 61–84.) The declaratory judgment counts sought declarations that

8    Plaintiff's losses, and those of the putative class members, stemming from the COVID-19

9    pandemic are insured losses under the Business Income, Extra Expense, and Civil Authority

10   provisions of their respective policies.

11        On July 7, 2020, TIC filed a motion to dismiss Plaintiff's complaint. [Dkt. 16]. Rather

12   than opposing TIC's Motion to Dismiss, on July 28, Plaintiff filed its FAC. [Dkt. 21] The FAC,

13   however, remains substantively unchanged from Plaintiff's original complaint, except for the

14   addition of an individual breach of contract claim against TIC. [3] (FAC ¶¶ 89-94.) The FAC does

15   not and cannot overcome the fundamental fact that Plaintiff's purported business losses are not

16   covered under the terms of the Policy.

## II. ARGUMENT

### A. Legal Standard

19        Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, dismissal "can be

20   based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a

21   cognizable legal theory." (*Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir.

22   1990).) "[A] plaintiff's obligation to provide the grounds of his entitlement to relief requires

23   more than labels and conclusions, and a formulaic recitation of the elements of a cause of action

24

25   _____

26   [3] The FAC also adds allegations concerning statements made by CNA Financial Corporation's
     Chief Executive Officer. (FAC ¶ 49-51.) TIC disputes that said statements constitute a response

27   to Plaintiff's claim or to claims made by other policyholders. TIC further disputes Plaintiff's
     allegation of a "corporate policy to deny COVID-19 related losses claimed under property

28   insurance policies regardless of what the policies actually say." TIC investigated Plaintiff's claim
     and timely responded by letter. (*See* FAC ¶ 92.)

DEFENDANT'S MOTION TO DISMISS FAC
20-cv-002951-MMC

SQUIRE PATTON BOGGS (US) LLP
275 Battery Street, Suite 2600
San Francisco, California 94111

will not do." (*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal quotation, citation, and alteration omitted).)

"To survive a motion to dismiss, a complaint must contain sufficient factual material, accepted as true, to 'state a claim to relief that is plausible on its face.'" (*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570).) "Factual allegations must be enough to raise a right to relief above the speculative level[.]" (*Twombly*, 550 U.S. at 555.) Courts "are not bound to accept as true a legal conclusion couched as a factual allegation." (*Iqbal*, 556 U.S. at 678 (internal quotation and citation omitted).)

Even taking Plaintiff's factual, non-conclusory allegations as true, however, the unambiguous terms of the Policy do not permit recovery, and the FAC should be dismissed.

To the extent plaintiff seeks to assert claims on behalf of nationwide putative classes (FAC ¶¶ 53-55), TIC does not consent to personal jurisdiction in this Court as to the claims of putative class members that are not residents of the State of Californian. (*See Bristol-Myers Squibb Co. v. Superior Court of California*, 137 S. Ct. 1773 (2017).) While there exists a split of authority among the federal courts, including in this district, as to whether *Bristol-Myers Squibb* applies in the context of class actions as opposed to mass torts, TIC contends that the better-reasoned decisions compel a finding that this Court lacks jurisdiction over claims of non-resident, absent class members. (*See, e.g., Carpenter v. PetSmart, Inc.*, 2020 U.S. Dist. LEXIS 35459, at *12-13 (S.D. Cal. Mar. 2, 2020) (noting split among federal courts here and elsewhere and "finding that *Bristol-Myers Squibb* applies in the nationwide class action context.").) In addition, plaintiff lacks standing under Rule 12(b)(1) of the Federal Rules of Civil Procedure to assert claims on behalf of non-California putative class members because the laws of the states of the absent class members would apply to the interpretation of their policies but not to plaintiff's claims. (*Carpenter*, 2020 U.S. Dist. LEXIS 35459, at *21-26) (holding that California named plaintiff lacked standing to press "claims on behalf of unnamed class members under other states' laws that do not govern his own claims"); *see also Corcoran v. CVS Health Corp.*, 169 F. Supp. 3d 970, 990 (N.D. Cal. 2016) ("Courts routinely dismiss claims where no plaintiff is alleged to reside in a state whose laws the class seeks to enforce."); (*Am. W. Door & Trim v. Arch Specialty*

SQUIRE PATTON BOGGS (US) LLP
275 Battery Street, Suite 2600
San Francisco, California 94111

*Ins. Co.*, 2015 U.S. Dist. LEXIS 34589, at *23 (C.D. Cal. Mar. 18, 2015) (state insurance law inherently "varies by state").)

### B. All of Plaintiff's Claims Must Be Dismissed Because The Policy Does Not Provide Coverage for Plaintiff's Alleged Losses

It is the insured's burden to establish that the claim is within the scope of insurance coverage. (*Aydin Corp. v. First State Ins. Co.*, 18 Cal. 4th 1183, 1188 (Cal. 1998); *Gov't Empls. Ins. Co. v. Nadkarni*, 391 F. Supp. 3d 917, 925 (N.D. Cal. 2019).) Accordingly, a complaint seeking a declaration that an insurance agreement provides the asserted coverage must allege sufficient facts to show that the claims fall within the policy's coverage.

In this diversity case, California substantive law applies, including its choice-of-law rules. (*Ins. Co. of N. Am. v. Fed. Exp. Corp.*, 189 F.3d 914, 919 (9th Cir. 1999).)[4] Under California law, insurance policies "are contracts to which the ordinary rules of contract interpretation apply." (*Zaghi v. State Farm Gen. Ins. Co.*, 77 F. Supp. 3d 974, 977 (N.D. Cal. 2015) (citing *Travelers Cas. & Sur. Co. v. Transcon. Ins. Co.*, 122 Cal. App. 4th 949, 955, 19 Cal. Rptr. 3d 272 (Cal. Ct. App. 2004) and *Bank of the West v. Superior Court*, 2 Cal.4th 1254, 1264, 10 Cal. Rptr. 2d 538, 833 P.2d 545 (Cal. Ct. App. 1992)).) California insurance law requires that the interpretation of a policy give effect to the parties' mutual intentions as of the time of contracting. (*AIU Ins. Co. v. Superior Court (FMC Corporation)*, 51 Cal. 3d 807, 821 (Cal. 1990).) "Where contract language is clear and explicit and does not lead to absurd results, we ascertain intent from the written terms and go no further." (*Ticor Title Ins. Co. v. Employers Ins. of Wausau*, 40 Cal. App. 4th 1699, 1707, 48 Cal. Rptr. 2d 368 (Cal. Ct. App. 1995); *see also* Cal. Civ. Code § 1638 ("The language of a contract is to govern its interpretation, if the language is clear and explicit, and does not involve an absurdity."); *id.* § 1639 ("When a contract is reduced to writing, the intention of the

---

[4] One of California's choice-of-law tests is set forth in California Civil Code § 1646, which states that "[a] contract is to be interpreted according to the law and usage of the place where it is to be performed; or, if it does not indicate a place of performance, according to the law and usage of the place where it is made." Plaintiff is a California entity with its principal place of business located in Newport Beach, California. The Policy provides coverage for Plaintiff's Covered Property, which is located at the designated Newport Beach location. Consequently, California law applies to the coverage issues presented under Plaintiff's Policy.

- 10 -

parties is to be ascertained from the writing alone, if possible ....").)  Policy terms are applied as defined in the document or, when not defined, read in their ordinary and popular sense.  (*AIU Ins. Co.*, 51 Cal. 3d at 825.)

Where, as here, the insured cannot meet its burden to show that the policy provides the claimed coverage, courts in this District will dismiss the complaint.  (*See Tarakanov v. Lexington Ins. Co.*, 2020 U.S. Dist. LEXIS 40903, __ F. Supp. 3d ___ (N.D. Cal. 2020) (dismissing first-party property insurance claim arising from the 2017 Northern California wildfires for failure to state a plausible claim); *Hotchalk, Inc. v. Scottsdale Ins. Co.*, 217 F. Supp. 3d 1058 (N.D. Cal. 2016) (dismissing claim of coverage for false claims act violations under directors and officers policy); *Sheahan v. State Farm Gen. Ins. Co.*, 394 F. Supp. 3d 997 (N.D. Cal. 2019) (dismissal of putative class action concerning claims of undervaluing of replacement costs for wildfire damaged homes).)

> **1.  Plaintiff's Claims Should Be Dismissed Because Plaintiff Did Not Suffer Direct Physical Loss of or Damage to Property as Required Under the Business Income and Extra Expense Endorsement**

The FAC does not plausibly allege that Plaintiff's claim under the Business Income and Extra Expense Endorsement falls within the coverage provisions of the Policy.  The plain language of the Business Income and Extra Expense Endorsement provides coverage for "actual loss of Business Income [Plaintiff] sustains due to the necessary 'suspension' of [Plaintiff's] 'operations' during the 'period of restoration' " only if (1) the suspension is "caused by direct physical loss of or damage to property at the described premises" and (2) the direct physical loss or damage is "caused by or result[s] from a Covered Cause of Loss."  (Ex. A at 36.)  The described premises is defined to mean "[t]he portion of the building which you [Plaintiff] rent, lease or occupy"—in Plaintiff's case, "2901 W. Coast Hwy Ste 200 Newport Beach, CA," as set forth in the Policy Declarations—and any portion of the building used by Plaintiff to gain access to its suite.  (*Id.* at 36.)

The Extra Expense provision similarly requires "direct physical loss of or damage to property caused by or resulting from a Covered Cause of Loss."  (*Id.* at 37; *see also Ward Gen.*

SQUIRE PATTON BOGGS (US) LLP
275 Battery Street, Suite 2600
San Francisco, California 94111

DEFENDANT'S MOTION TO DISMISS FAC
20-cv-002951-MMC

SQUIRE PATTON BOGGS (US) LLP
275 Battery Street, Suite 2600
San Francisco, California 94111

1   *Ins. Servs., Inc. v. Emp'rs Fire Ins. Co.*, 114 Cal. App. 4th 548, 555, 7 Cal. Rptr. 3d 844, 850

2   (Cal. Ct. App. 2003) ("Thus, although the damage covered, loss of income, is not itself a physical

3   loss, the loss of income must be *caused* by a physical loss….") (emphasis in original).)    Because

4   the FAC does not plausibly allege that property at Plaintiff's premises suffered any direct

5   physical loss or damage, and attributes Plaintiff's suspension of its business (and resulting losses)

6   to the COVID-19 pandemic, the Proclamation, and the Executive Order, not physical damage to

7   property, no coverage is available under the Policy.

8            **a.   Plaintiff Does Not Plausibly Allege "Direct Physical Loss of or**
             **Damage To" Plaintiff's Property**
9

10          The Policy expressly and unambiguously provides that Business Income and Extra

11  Expense losses are covered only if those losses result from direct *physical* loss of or damage to

12  the insured's property.   California courts have interpreted the phrase "direct physical loss of or

13  damage to" property to require either "direct physical loss of" or "direct physical damage to"

14  property.   (*Ward Gen. Ins. Servs., Inc.*, 114 Cal. App. 4th at 554 ("[W]e construe the words

15  'direct physical' to modify both 'loss of' and 'damage to.' ").)   "That the loss needs to be

16  'physical,' given the ordinary meaning of the term, is 'widely held to exclude alleged losses that

17  are intangible or incorporeal, and, thereby, to preclude any claim against the property insurer

18  when the insured merely suffers a detrimental economic impact unaccompanied by a distinct,

19  demonstrable, physical alteration of the property.'"   (*MRI Healthcare Ctr. of Glendale, Inc. v.*

20  *State Farm Gen. Ins. Co.*, 187 Cal. App. 4th 766, 779, 115 Cal. Rptr. 3d 27, 37 (Cal. Ct. App.

21  2010) (quoting 10A Couch on Insurance, § 148:46 at pp. 148-81).)   Physical loss or damage thus

22  requires that "some *external force* must have acted upon the insured property to cause a *physical*

23  *change* in the condition of the property, i.e., it must have been 'damaged' within the common

24  understanding of that term."   (*MRI Healthcare*, 187 Cal. App. 4th at 780 (emphasis in original);

25  *see also Meridian Textiles, Inc. v. Indem. Ins. Co.*, No. CV 06-4766 CAS, 2008 U.S. Dist. LEXIS

26  91371, at *17 (C.D. Cal. Mar. 20, 2008) (holding that in order to trigger coverage under a

27  physical loss or damage provision, the insured must demonstrate "some tangible change" in the

28  property or "some detectable physical change").)

California law requiring tangible, physical damage to trigger coverage is consistent with authority in other jurisdictions. For example, in *Newman Myers Kreines Gross, P.C. v. Great N. Ins. Co.*, 17 F. Supp. 3d 323 (S.D.N.Y. 2014), the Court held that the closure of a law firm's premises resulting from a power shutoff by Con Edison, the local New York City energy utility, in advance of Hurricane Sandy did not trigger business income or extra expense coverage because there was no physical damage to the insured's offices located at 40 Wall Street. The Court noted that "[t]he words 'direct' and 'physical,' which modify the phrase 'loss or damage,' ordinarily connote actual, demonstrable harm of some form to the premises itself, rather than forced closure of the premises for reasons exogenous to the premises themselves, or the adverse business consequences that flow from such closure." (*Id.* at 331; *see also, e.g., Port Auth. of N.Y. & N.J. v. Affiliated FM Ins. Co.*, 311 F.3d 226, 235 (3d Cir. 2002) ("In ordinary parlance and widely accepted definition, physical damage to property 'means a distinct, demonstrable, and physical alteration' of its structure."); *Mama Jo's, Inc. v. Sparta Ins. Co.*, No. 17-cv-23362-KMM, 2018 WL 3412974, at *9 (S.D. Fla. June 11, 2018) ("[D]irect physical loss 'contemplates an actual change in insured property then in a satisfactory state, occasioned by accident or other fortuitous event directly upon the property causing it to become unsatisfactory for future use or requiring that repairs be made to make it so.") *aff'd* No. 18-12887, 2020 U.S. App. LEXIS 26103 (11th Cir. August 18, 2020) (holding that "an item or structure that merely needs to be cleaned has not suffered a 'loss' which is both 'direct' and 'physical.'" (*id.* at *25, citing *MRI Healthcare*, 187 Cal. App. 4th at 779.).) Business Income and Extra Expense claims under the Policy language at issue here are thus compensable only when the suspension of business was caused by a demonstrable physical alteration to the insured's property.

Similarly, courts in other jurisdictions considering COVID-19 business interruption claims have dismissed actions for failure to allege or establish direct physical loss of or damage to the property. For example, in a recent decision on all fours with Plaintiff's claims here, a Michigan court dismissed the plaintiff's business interruption claim for alleged losses caused by the COVID-19 pandemic for failure to allege direct physical loss of or damage to its property. (*See Gavrilides Mgmt. Co.* v. *Michigan Ins. Co.*, Case No. 20-258-CB-C30 (Ingham County),

SQUIRE PATTON BOGGS (US) LLP
275 Battery Street, Suite 2600
San Francisco, California 94111

2020 Mich. Cir. LEXIS 395 (Mich. Cir. Ct. July 1, 2020); RJN Exs. E (Order Granting Summary Disposition), F (Motion for Summary Disposition Transcript).)  Similar to Plaintiff's claim for Civil Authority coverage, the claim in *Gavrilides* was premised entirely on orders issued by the Governor of the State of Michigan that restricted dine-in services at plaintiff's restaurant and allegedly caused plaintiff to reduce operations.  The court summarily rejected plaintiff's argument that it experienced a physical loss of property because customers were physically prohibited from dining in at plaintiff's restaurant, calling the argument "nonsense" and concluding that it came "nowhere close to meeting the requirement that there has to be some physical alteration to or physical damage or tangible damage to the integrity" of the property to trigger coverage.  (RJN Ex. F at 20:14-18.)  The court granted the defendant's motion for summary disposition without leave to amend, noting that amendment would be futile because the Michigan executive orders and the coronavirus "do not constitute the direct physical damage or injury that is required under the policy."  (*Id.* at 23:13-15.)[5]

Likewise, in another analogous case, *Rose's 1, LLC v. Erie Insurance Exchange*, Case No. 2020 CA 002424 B, 2020 D.C. Super. LEXIS 10 (D.C. Super. Ct. Aug. 6, 2020), the court denied the plaintiffs' motion and granted the defendant's motion, holding that "'direct loss' implies some form of direct physical change to the insured property."  (*Rose's 1*, 2020 D.C. Super. LEXIS 10, at *12-*13; RJN Ex. G at 9.)  The court noted that "none of the cases cited by Plaintiffs stand for the proposition that a governmental edict, standing alone, constitutes a direct physical loss under an insurance policy." (*Rose's 1*, 2020 D.C. Super. LEXIS 10, at *7; RJN Ex. G at 5.)  Citing *Roundabout* and *Newman Meyers*, the court noted that "courts have rejected coverage when a business's closure was not due to direct physical harm to the insured premises.  (*Rose's 1*, 2020 D.C. Super. LEXIS 10, at *9; RJN Ex. G at 7.)  Concluding that the plaintiff could not show a

---

[5] In explaining why it was denying leave to amend, the Court stated: "[T]here actually is no factual development that could change the fact that the complaint is complaining about the loss of access or use of the premise[s] due to executive orders and the Covid-19 virus crisis.  So, there's no factual development that could possibly change that or amendment to the complaint that could change that those things do not constitute the direct physical damage or injury that's required under the policy…"  (RJN Ex. F at 23:7-15.)

SQUIRE PATTON BOGGS (US) LLP
275 Battery Street, Suite 2600
San Francisco, California 94111

"direct physical loss", the court granted summary judgment in favor of defendants. (*Rose's 1*, 2020 D.C. Super. LEXIS 10, at \*15; RJN Ex. G at 10.)

The most recent case addressing a COVID-19 business interruption claim under policy language requiring "direct physical loss" is *Diesel Barbershop, LLC et al. v. State Farm Lloyds*, 2020 U.S. Dist. LEXIS 147276 (W.D. Tex. Aug. 13, 2020). In that case, the District Court construed policy language requiring "direct physical loss" to refer to "tangible injury to property." (*Id.* at \*15-17 (citing *United Air Lines*).) The court further recognized that controlling Fifth Circuit precedent requires the loss "to have been a 'distinct, demonstrable physical alteration of the property.'" (*Id.* at \*16 (citations omitted).) It concluded the *Diesel* plaintiffs failed to plead a direct physical loss and granted defendant's motion to dismiss. (*Id.* at \*21-22.)[6]

Here, Plaintiff does not—and cannot—allege facts showing any indicia of property damage, nor does Plaintiff claim that COVID-19 caused any direct physical alteration or change constituting "direct physical loss of or damage to" Plaintiff's premises. Plaintiff alleges, implausibly, that viruses generally cause damage to property simply by their presence, which Plaintiff claims "mak[es] the property dangerous and less valuable," and quotes a 2006 industry group statement suggesting that viruses can sometimes contaminate property. But the FAC contains no allegation that the coronavirus that causes COVID-19 was ever found at *Plaintiff's premises*, let alone that the coronavirus physically altered or changed Plaintiff's property.[7]

---

[6] On August 12, 2020, the Western District of Missouri became the first and only court to allow a COVID-19-related business interruption case to survive a motion to dismiss: *Studio 417 Inc. et al. v. The Cincinnati Insurance Co.*, 2020 U.S. Dist. LEXIS 147600 (W.D. Mo. Aug. 12, 2020). In considering the motion to dismiss, the *Studio 417* court explicitly refused to follow the California standard that "direct physical loss of" requires a physical, tangible alteration to property. (*Id.* at \*15 ("To be sure, and as argued by Defendant, there is case law in support of its position that physical tangible alteration is required to show a 'physical loss.' [Citations] However, Plaintiffs correctly respond that these cases were decided at the summary judgment stage, are factually dissimilar, and/or are not binding.") (citations omitted).) California law, as applied to the policy language at issue here, compels a different result in this case.

[7] Even if (contrary to fact and the Complaint) Plaintiff had specifically alleged the physical presence of coronavirus on property at Plaintiff's premises, that would still be insufficient to plead and prove direct physical loss or damage. According to CDC guidelines, "[c]oronaviruses on surfaces and objects naturally die within hours to days" and can be removed with "[n]ormal routine cleaning with soap and water" or killed with disinfectants. (*See* RJN H *CDC Reopening Guidance for Cleaning and Disinfecting Public Spaces, Workplaces, Businesses, Schools, and*

SQUIRE PATTON BOGGS (US) LLP
275 Battery Street, Suite 2600
San Francisco, California 94111

1    Plaintiff also makes no allegation that property at its premises was physically lost.  Rather, the

2    purported "damage" that Plaintiff alleges the coronavirus caused was neither direct nor physical,

3    but rather economic damage resulting from the shutdown of its business.  (FAC ¶ 39 ("COVID-

4    19 damaged the 'Covered Property' by requiring it to be shut down.").)  Thus, Plaintiff's

5    allegation that its business operations were suspended as a result of the alleged presence of

6    COVID-19 "in public places and businesses in Newport Beach and across the nation" (FAC ¶ 44)

7    fails to allege any "actual, demonstrable harm of some form" to property *at the insured's*

8    *premises*, as required for coverage under the Policy.  (*See, supra, Gavrilides Mgmt. Co.* (RJN Ex.

9    F at 18:18-19:14); *Diesel Barbershop, LLC et al.*, 2020 U.S. Dist. LEXIS 147276, at *15-16, 21);

10   *Newman Myers*, 17 F. Supp. 3d at 331.)

11       Because the FAC does not allege any direct physical loss of or damage to Plaintiff's

12   property, which is a necessary trigger for coverage under the Policy, there is no coverage under

13   the Business Income and Extra Expense Endorsement, and Plaintiff's claims for declaratory

14   judgment and breach of contract fail as a matter of law.

15

16                    **b.  There Is No Business Income or Extra Expense Coverage
                     Because There Has Been No "Period of Restoration"**

17       The Business Income and Extra Expense Endorsement coverage that Plaintiff seeks is also

18   limited to the "period of restoration."  (Ex. A at 36-37.)  This period "[b]egins with the date of

19   *direct physical loss or damage*" and ends on the earlier of the "date when the property at the

20   described premises should be *repaired, rebuilt or replaced* with reasonable speed and similar

21

22   _____

     *Homes*, cdc.gov/coronavirus/2019-ncov/community/reopen-guidance.html (last visited August
23   17, 2020).)  The fleeting presence of a virus that can survive on surfaces for only a few hours or
     days (*see* FAC ¶ 34), and can be easily removed through ordinary cleaning or disinfectants,
24   cannot cause physical loss or damage that would render property unusable or uninhabitable.  (*See
     Mama Jo's*, 2018 WL 3412974, at *9 (finding no direct physical loss or damage and noting that
25   "cleaning is not considered direct physical loss"); *Mastellone* v. *Lightning Rod Mut. Ins. Co.*, 884
     N.E.2d 1130, 1144–45 (Ohio Ct. App. 2008) (holding that mold contamination that could be
26   remediated through standard cleaning procedures was not "direct physical loss or damage"); *see
     also* RJN Ex. D, *Social Life Magazine, Inc.* v. *Sentinel Ins. Co. Ltd.*, No. 20 Civ. 3311 (VEC), Tr.
27   at 4:25–5:4 (S.D.N.Y. May 14, 2020) (in denying preliminary injunction in property insurance
     action concerning alleged property damage caused by COVID-19, court stated:  "There is no
28   damage to your property. . . . [COVID-19] damages lungs.  It doesn't damage printing presses.").)

quality; or the date when business is resumed at a new permanent location." (*Id.* at 31 (emphases added).) That the coverage does not begin until the "direct physical loss or damage" occurs and ends when the property is "repaired, rebuilt or replaced" further confirms that, without direct physical loss or damage, there is no coverage at all. (*See Phila. Parking Auth. v. Fed. Ins. Co.*, 385 F. Supp. 2d 280, 288 (S.D.N.Y. 2005) (the terms "'rebuild,' 'repair,' and 'replace' all strongly suggest that the damage contemplated by the Policy is physical in nature"); *see also Newman Myers*, 17 F. Supp. 3d at 332 ("The words 'repair' and 'replace' contemplate physical damage to the insured premises.").)

Here, the period of restoration has not begun because there has been no direct physical loss of or damage to Plaintiff's property. The FAC does not allege any physical damage to Plaintiff's premises requiring repair, rebuilding, or replacement. Aside from using the phrase in a handful of paragraphs (*see, e.g.,* FAC ¶¶ 24, 73, 76), the FAC does not even plead a "period of restoration" or specify the repairs necessitated by any supposed property damage. To the contrary, Plaintiff pleads that it (and putative class members) "took precautions; performed repairs; purchased equipment or other services due to COVD-19; or otherwise incurred expenses that were directly *due to the interruption or suspension of their businesses*"—not due to direct physical damage to their insured premises. (FAC ¶ 73 (emphasis added).)

> **2. Plaintiff's Civil Authority Claim Should Be Dismissed Because Plaintiff Has Not Alleged Facts Showing Direct Physical Loss of or Damage to Property at Another Location or That Access to its Premises Was Prohibited As a Result**

Plaintiff also cannot recover under the Civil Authority Endorsement of the Policy because the Proclamation and the Executive Order were not issued due to "direct physical loss of or damage to property at locations, other than [Plaintiff's] premises" and did not prohibit access to Plaintiff's premises. (*See* Ex. A at 62; *see also* generally 10A Couch on Insurance § 152:22.)

As a threshold matter, to trigger coverage under the Policy, the civil authority action must have been due to direct physical loss of or damage to property at a location other than the insured premises. (Ex. A at 62.) Neither the Proclamation nor the Executive Order makes *any* reference to direct physical loss of or damage to property at *any* location. (*See* Exs. B & C.) Rather, the

SQUIRE PATTON BOGGS (US) LLP
275 Battery Street, Suite 2600
San Francisco, California 94111

SQUIRE PATTON BOGGS (US) LLP
275 Battery Street, Suite 2600
San Francisco, California 94111

stated purpose of both measures was to provide healthcare for people infected by the virus and to protect others from infection.  (*Id.*)  Plaintiff concedes that the objective of these orders was to limit person-to-person contact, not to prohibit contact between persons and buildings, *i.e.*, the "orders issued" to "limit the number of guests that may be allowed inside a business premises at one time" and to "require distancing between patrons."  (FAC ¶ 43).  In other words, the orders "were issued due to the 'community spread' of COVID-19" (FAC ¶ 44.)—that is, to limit the spread of coronavirus among people in order to "bend the curve."  Because the civil authority orders on which Plaintiff relies—the Proclamation and the Executive Order (including the Public Health Order incorporated therein)—were addressed to public health, not direct physical loss of or damage to property at a location other than Plaintiff's premises, the Civil Authority Endorsement does not apply.

For a civil authority claim to succeed, the civil authority action also must expressly prohibit access to Plaintiff's premises, which unambiguously means a complete bar to entry.  (*S. Hospitality.*, 393 F.3d at 1140–41 (citing cases from various states); Ex. A at 62 (requiring that the civil authority action "prohibit[] access to the described premises"); *see also Syufy Enters. v. Home Ins. Co.*, No. 94-0756 FMS, 1995 U.S. Dist. LEXIS 3771 at *5 (N.D. Cal. 1995) (the "civil authority must specifically deny access to [the insured's premises].  Here, no civil authority ever specifically prohibited any individual from entering [the insured's premises]."); *Tu v. Dongbu Ins. Co.*, No. 17-cv-03495-JSC, 2018 U.S. Dist. LEXIS 151322 at *26-27 (N.D. Cal. 2018) (coverage would apply if "a covered cause of loss caused damage to the street in front of the [insured premises], and a civil authority closed the [insured premises] because of that damage.").)  Neither the Proclamation nor the Executive Order contains any provision prohibiting access to Plaintiff's premises.

It is not enough that the civil authority order merely hampered or discouraged access to the insured's premises.  (*See Ski Shawnee, Inc. v. Commonwealth Ins. Co.*, No. 3:09-CV-02391, 2010 WL 2696782, at *1, 5 (M.D. Pa. July 6, 2010) (no coverage when order closed main road that 70 percent—but not 100 percent—of patrons used to access ski resort); *Kean, Miller, Hawthorne, D'Armond McCowan & Jarman, LLP v. Nat'l Fire Ins. Co. of Hartford*, No. 06-770-

C, 2007 WL 2489711, at *6 (M.D. La. Aug. 29, 2007) (claim failed when plaintiff closed its office to comply with advisories recommending that residents remain home after hurricane despite no orders forbidding or blocking access to premises); *Abner, Herrman & Brock, Inc. v. Great Northern Ins. Co.*, 308 F. Supp. 2d 331, 335–36 (S.D.N.Y. 2004) (after full prohibition of access lifted, plaintiff had no civil authority claim even though traffic restrictions continued to hamper access to premises).)  Nor is it sufficient that a civil authority's closure of other businesses causes a loss of income to the insured; the civil authority must prohibit access to the *insured's* premises specifically.  (*S. Hospitality*, 393 F.3d at 1140–41 (no recovery after 9/11 for hotel operator because, although FAA's order grounding planes greatly depressed hotels' business, it did not close hotels).)  That the stay-at-home direction in the Executive Order may have lost Plaintiff business or hampered its employees from coming to work is thus not sufficient to invoke coverage under the Civil Authority Endorsement.

This District Court, in *Syufy Enterprises*, *supra*, 1995 U.S. Dist. LEXIS 3771, denied a business interruption claim by a movie theater operator that had suspended its business operations when, following the Rodney King verdict, civil authorities in several large cities imposed a dawn-to-dusk curfew to quell potential rioting and looting.  The policy in question covered business income loss where "as a direct result of damage to or destruction of property adjacent to the premises herein described by the peril(s) insured against, access to such described premises is specifically prohibited by order of civil authority."  (*Id.* at *2.)  The court held that the civil authority provision was not triggered for two reasons: first, no order ever "specifically prohibited any individual from entering a theater," and second, the policy required that the civil authority order must be "a direct result of damage to or destruction of property adjacent" to the insured's property, not a curfew imposed to prevent future rioting and property damage.  (*Id.*, at *5 (emphases in original).)

Civil Authority coverage does not apply here for the same reasons as in *Syufy Enterprises*. However Plaintiff may mischaracterize them, the fact remains that on their face the orders have nothing to do with physical loss of or damage to property and do not  prohibit access to Plaintiff's (or any other) premises.  The Proclamation simply states how the State will prepare for and treat

SQUIRE PATTON BOGGS (US) LLP
275 Battery Street, Suite 2600
San Francisco, California 94111

individuals diagnosed with COVID-19, and prevent the transmission of the coronavirus from person to person.  The Executive Order directs all California residents, other than critical infrastructure workers, to stay at home as much as possible, and to practice social distancing when they must go out for necessities such as food, prescriptions, and health care.  (*See* Ex. C at 2 (permitting all Californians working in 16 critical infrastructures to continue working "because of the importance of these sectors to Californian's health and well-being" and directing others to "practice social distancing" when they need to leave their homes).)  Neither prohibits access to *any* premises, let alone Plaintiff's premises in particular.  While the Proclamation or the Executive Order might have reduced Plaintiff's revenue by reducing the demand for its services, a loss of profits from reduced work volume is not compensable under a civil authority provision. (*See United Air Lines v. Ins. Co. of the State of Pa.*, 439 F.3d 128, 134–35 (2d Cir. 2006); *Ski Shawnee*, 2010 WL 2696782, at *5.)

Under a plain reading of the Policy, and consistent with established authority, Plaintiff has no claim under the Civil Authority Endorsement, and the FAC should be dismissed.

**3. Because Plaintiff Has Not Alleged a Claim within the Policy's Grant of Coverage, the Purported Absence of a Virus Exclusion Is Irrelevant.**

The FAC alleges that Plaintiff is entitled to coverage under the Policy because "'All risk' policies cover all damage from all sources unless it is specifically excluded," and Plaintiff's Policy contains "no exclusion or limit for damages from viruses." (FAC ¶ 19.)  But Plaintiff has it backwards: it is the insured's burden to show that the alleged loss falls within the policy's grant of coverage before exclusions even become relevant.  (*See Aydin Corp.*, 18 Cal. 4th at 1188; *Gov't Empls. Ins. Co.*, 391 F. Supp. 3d at 925.)  Plaintiff cannot carry that burden here because, as shown above, the trigger for coverage is "direct physical loss of or damage to" the insured's premises (for the Business Income and Extra Expense coverage) or other premises (for Civil Authority coverage).  (*See* Sections II.B.1-2.) The insured must meet these threshold requirements to trigger coverage before there is any need to inquire whether there is an applicable exclusion.  Plaintiff's focus on the virus exclusion misses the mark for an additional reason: the Policy does contain an exclusion for loss or damage caused by the "[p]resence, growth,

proliferation, spread or any activity of … 'microbes.'" (Ex. A at 98.)  The Policy defines

microbes as "any non-fungal micro-organism or non-fungal, colony-form organism *that causes*

*infection or disease.*" (*Id.* at 99 (emphasis added).)  Because a virus is a non-fungal micro-

organism that causes infection or disease, coverage is excluded under the Policy, even if

Plaintiff's claim could meet the physical loss or damage trigger.  (*See* CDC, Vaccines &

Immunizations: Glossary, *at* https://www.cdc.gov/vaccines/terms/glossary.html (defining

"microbes" as "[t]iny organisms (*including viruses* and bacteria) that can only be seen with a

microscope") (emphasis added).)  But the Court need not address the scope of that or other

applicable exclusions on this motion, because Plaintiff has failed to allege a loss that falls within

any grant of coverage under the Policy.

For each of the foregoing reasons, because Plaintiff's claims for its alleged loss of

business income are not covered under the Policy, the FAC fails to state a claim against TIC upon

which relief can be granted.  Accordingly, Plaintiff's declaratory judgment and breach of contract

claims should be dismissed.

### C.  Plaintiff's Declaratory Relief Claims Must also Be Dismissed Because They Are Entirely Duplicative of Its Individual Breach of Contract Claim

Plaintiff's claims for declaratory relief should be dismissed, as the declaratory judgments

that Plaintiff seeks are entirely duplicative of and subsumed by its individual breach of contract

claim against TIC.  While 22 U.S.C. § 2201 provides that the Court may declare the respective

rights and duties amongst the parties, courts will often dismiss such claims if the declaratory

claim is duplicative of other claims alleged in the complaint. (*See Solarcity Corp. v. Sunpower*

*Corp.*, No. 16-CV-05509-LHK, 2017 U.S. Dist. LEXIS 68639, at *9 (N.D. Cal. May 4, 2017)

(collecting cases).)  This is particularly true in insurance actions, where declaratory judgment

claims regarding coverage are often subsumed by a breach of contract claim alleging a failure to

provide such coverage.  (*See, e.g., Essex Marina City Club, L.P. v. Cont'l Cas. Co.*, No. 11-408

SC, 2011 U.S. Dist. LEXIS 49512, at *10 (N.D. Cal. May 9, 2011) ("Here, a declaration of the

duty owed by [defendant] to [plaintiff] adds nothing to the breach-of-contract claim asserted and

likely to be resolved in this action."); *see also Butta v. GEICO Cas. Co.* (E.D. Pa. 2019) 400 F.

SQUIRE PATTON BOGGS (US) LLP
275 Battery Street, Suite 2600
San Francisco, California 94111

1  Supp. 3d 225, 236 (dismissing declaratory relief claims alleged on behalf of a putative class, as

2  those claims were duplicative of plaintiff's individual breach of contract claims).)

3       Plaintiff's declaratory relief claims here are entirely duplicative of its individual breach of

4  contract claim. The declaratory relief claims seeks judicial declarations that its losses are covered

5  under Business Income, Extra Expense, and Civil Authority provisions, and that TIC is obligated

6  to pay for the full amount of its losses.  (FAC, ¶¶ 72, 80, 88.)  A declaration that coverage exists

7  and that TIC has a duty to pay covered losses are necessary elements of Plaintiff's breach of

8  contract claim, and add nothing independent to that claim.  (*See Essex,* 2011 U.S. Dist. LEXIS

9  49512, at *10.)  Because Plaintiff does not seek a judicial declaration of any issues not subsumed

10 by its breach of contract claim, the claim is entirely duplicative and should be dismissed.

11                           **III.    CONCLUSION**

12       For all the reasons stated above, Plaintiff has failed to state any claim upon which relief

13 can be granted.  These are not mere pleading deficiencies; Plaintiff's alleged business interruption

14 losses from the COVID-19 pandemic simply do not trigger coverage under the Policy, and no

15 amount of discovery can change that outcome.  Accordingly, further amendment would be futile,

16 and TIC respectfully requests that the Court dismiss the FAC with prejudice under Rule 12(b)(6).

17 (*Gardner v. Martino*, 563 F.3d 981, 990 (9th Cir. 2009) (no abuse of discretion in denying leave

18 to amend when amendment would be futile).)

19
   Dated:  August 18, 2020                    Squire Patton Boggs (US) LLP
20

21                                             By: */s/ G. David Godwin*

22                                                 G. David Godwin

23                                             Attorneys for Defendant Transportation
                                               Insurance Company
24

25

26

27

28