1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

United States District Court
Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

O'BRIEN SALES AND MARKETING, INC., on behalf of itself and others similarly situated,

         Plaintiff,

   v.

TRANSPORTATION INSURANCE COMPANY,

         Defendant.

Case No. 20-cv-02951-MMC

**ORDER GRANTING DEFENDANT'S MOTION TO DISMISS; VACATING HEARING; DISMISSING SECOND AMENDED COMPLAINT WITH PREJUDICE**

     Before the Court is Transportation Insurance Company's ("TIC") Motion, filed November 23, 2020, "to Dismiss Plaintiff's Second Amended Complaint."  Plaintiff O'Brien Sales and Marketing, Inc. ("O'Brien") has filed opposition, to which TIC has replied.  Having read and considered the papers filed in support of and in opposition to the motion, the Court deems the matter appropriate for determination on the parties' respective written submissions, VACATES the hearing scheduled for January 15, 2021, and rules as follows.

**BACKGROUND**

     The instant action, like many other actions filed in this district, arises in the context of the COVID-19 pandemic and the significant impact the pandemic has had on business operations nationwide.  O'Brien, a marketing agency (see Second Am. Compl. ("SAC") ¶ 13), alleges that, "[d]ue to safety concerns about COVID-19, and in accordance with state orders, [it] stopped using its business offices to host clients and vendors" (see id. ¶ 53), and could not, at times, access its business premises (see id. ¶ 58).  O'Brien

further alleges it submitted, under an insurance policy ("Policy") issued by TIC, a claim for business income lost and expenses incurred as a result of the above-described disruption.  (See id. ¶¶ 59-60.)

The Policy provides "Business Income and Extra Expense" coverage as follows:[1]

1. Business Income

    a. Business Income means:

        (1) Net Income . . . that would have been earned or incurred . . . ; and

        (2) Continuing normal operating expenses incurred . . . .

    b. We will pay for the actual loss of Business Income you sustain due to the necessary "suspension" of your "operations" during the "period of restoration."[2]  The "suspension" must be caused by direct physical loss of or damage to property at the described premises.  The loss or damage must be caused by or result from a Covered Cause of Loss.

. . .

2. Extra Expense

    a. Extra Expense means reasonable and necessary expenses you incur during the "period of restoration" that you would not have incurred if there had been no direct physical loss of or damage to property caused by or resulting from a Covered Cause of Loss.

    b. We will pay Extra Expense (other than the expense to repair or replace property) to:

        (1) Avoid or minimize the "suspension" of business and to continue "operations" at the described premises or at replacement premises or temporary locations, including

---

[1] TIC's unopposed request that the Court take judicial notice of the Policy, submitted as Exhibit A to the Declaration of Jason Deitzel, is hereby GRANTED.  See Branch v. Tunnell, 14 F.3d 449, 454 (9th Cir. 1994) (holding, "documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading, may be considered in ruling on a Rule 12(b)(6) motion to dismiss").

[2] The Policy defines "[p]eriod of restoration" as the period of time that "[b]egins with the date of direct physical loss or damage caused by or resulting from any Covered Cause of Loss at the described premises" and ends on the earlier of "[t]he date when the property at the described premises should be repaired, rebuilt or replaced with reasonable speed and similar quality" or "[t]he date when business is resumed at a new permanent location."  (See Decl. of Jason Deitzel ("Deitzel Decl.") Ex. A at 32 (emphasis added).)

United States District Court
Northern District of California

relocation expenses and costs to equip and operate the
replacement premises or temporary locations; or

(2) Minimize the "suspension" of business if you cannot continue
"operations."

c.  We will also pay Extra Expense . . . to repair or replace the property,
but only to the extent it reduces the amount of loss that otherwise
would have been payable under Paragraph 1. Business Income
above.

(See Deitzel Decl. Ex. A at 37-38 (emphasis added).)[3]

The Policy also provides for "Civil Authority" coverage as follows:

Civil Authority

1.  When the Declarations show that you have coverage for Business
Income and Extra Expense, you may extend that insurance to apply to
the actual loss of Business Income you sustain and reasonable and
necessary Extra Expense you incur caused by action of civil authority
that prohibits access to the described premises.  The civil authority
action must be due to direct physical loss of or damage to property at
locations, other than described premises, caused by or resulting from a
Covered Cause of Loss.

(See Deitzel Decl. Ex. A at 63 (emphasis added).)

O'Brien alleges TIC denied the above-referenced claim.  (See SAC ¶ 60.)

Based on the foregoing allegations, O'Brien brings three causes of action for

"Declaratory Judgment," each of which is asserted on behalf of itself and one of three

putative classes, namely, a "Business Income Class," an "Extra Expense Class," and a

"Civil Authority Class."  Additionally, O'Brien brings, on behalf of itself, a cause of action

titled "Breach of Contract."

## LEGAL STANDARD

Dismissal under Rule 12(b)(6) of the Federal Rules of Civil Procedure "can be

based on the lack of a cognizable legal theory or the absence of sufficient facts alleged

under a cognizable legal theory."  See Balistreri v. Pacifica Police Dep't, 901 F.2d 696,

699 (9th Cir. 1990).  Rule 8(a)(2), however, "requires only 'a short and plain statement of

the claim showing that the pleader is entitled to relief.'"  See Bell Atlantic Corp. v.

---

[3] The page numbers for the Policy, as used herein, are those affixed to the top of
each page by this district's electronic filing program.

1  Twombly, 550 U.S. 544, 555 (2007) (quoting Fed. R. Civ. P. 8(a)(2)).  Consequently, "a

2  complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual

3  allegations."  See id.  Nonetheless, "a plaintiff's obligation to provide the grounds of his

4  entitlement to relief requires more than labels and conclusions, and a formulaic recitation

5  of the elements of a cause of action will not do."  See id. (internal quotation, citation, and

6  alteration omitted).

7  In analyzing a motion to dismiss, a district court must accept as true all material

8  allegations in the complaint and construe them in the light most favorable to the

9  nonmoving party.  See NL Indus., Inc. v. Kaplan, 792 F.2d 896, 898 (9th Cir. 1986).  "To

10  survive a motion to dismiss, a complaint must contain sufficient factual material, accepted

11  as true, to 'state a claim to relief that is plausible on its face.'"  Ashcroft v. Iqbal, 556 U.S.

12  662, 678 (2009) (quoting Twombly, 550 U.S. at 570).  "Factual allegations must be

13  enough to raise a right to relief above the speculative level[.]"  Twombly, 550 U.S. at 555.

14  Courts "are not bound to accept as true a legal conclusion couched as a factual

15  allegation."  See Iqbal, 556 U.S. at 678 (internal quotation and citation omitted).

16  ### DISCUSSION

17  In the First Amended Complaint ("FAC"), O'Brien asserted, as it does in the SAC,

18  three claims seeking declaratory judgment and one claim for breach of contract, each

19  based on the above-described denial of coverage.  By order filed October 9, 2020, the

20  Court, finding O'Brien had failed to plausibly allege a covered loss under the Policy,

21  dismissed the FAC and afforded O'Brien leave to amend.  By the instant motion, TIC

22  argues O'Brien has again failed to plausibly allege a covered loss under the Policy.

23  **A.  Business Income and Extra Expense Provisions**

24  As set forth above, the Business Income and Extra Expense provisions both

25  require, for coverage thereunder, "direct physical loss of or damage to" the insured's

26  property.  (See Deitzel Decl. Ex. A at 37-38.)  TIC argues O'Brien still fails to allege

27  sufficient facts demonstrating such loss or damage.

28

4

1   In resolving the instant dispute, the Court applies California law.[4]  See Stanford

2   Univ. Hosp. v. Fed. Ins. Co., 174 F.3d 1077, 1083 (9th Cir. 1999).  Under California law,

3   "interpretation of an insurance policy is a question of law."  See Waller v. Truck Ins. Exch.,

4   11 Cal. 4th 1, 18 (1995).  "Words used in an insurance policy are to be interpreted

5   according to the plain meaning which a layman would ordinarily attach to them."  Reserve

6   Ins. Co. v. Pisciotta, 30 Cal. 3d 800, 807 (1982) (noting "[c]ourts will not adopt a strained

7   or absurd interpretation in order to create an ambiguity where none exists").

8   Here, O'Brien argues, "[u]nder California law, there is a 'physical loss' of property

9   when the property can no longer [be] used for its intended purposes."  (See Opp. at

10   10:21-22.)  As discussed below, the Court finds O'Brien's proposed definition sweeps too

11   broadly.

12   The California Court of Appeal has interpreted "direct physical loss" to require a

13   "distinct, demonstrable, physical alteration of the property" or a "physical change in the

14   condition of the property."  See MRI Healthcare Ctr. of Glendale, Inc. v. State Farm Gen.

15   Ins. Co., 187 Cal. App. 4th 766, 771, 779-80 (2010) (internal quotations and citations

16   omitted) (construing insurance policy providing coverage for "direct physical loss to

17   business personal property").[5]

18   In light thereof, "a detrimental economic impact," such as loss of use,

19   "unaccompanied by a distinct, demonstrable, physical alteration of the property," is

20   insufficient.  See MRI, 187 Cal. App. 4th at 779; see also 10E, LLC v. Travelers

21   Indemnity Co. of Conn., No. 2:20-CV-04418-SVW-AS, 2020 WL 5359653, at *5 (C.D.

_____

[4] There is no dispute that California law governs the policy here at issue.

[5] As noted, the policy in MRI covered "direct physical loss to" property, rather than "direct physical loss of" property, the phrase used in the policy here at issue.  Even assuming the use of a different preposition can be deemed to expand the meaning of the policy language, however, the "loss" must still be "physical."  See Total Intermodal Servs. Inc. v. Travelers Prop. Cas. Co. of Am., No. CV 17-04908 AB (KSx), 2018 WL 3829767, at *1, *4 (C.D. Cal. July 11, 2018) (finding, where insured cargo was erroneously sent to China and not capable of being returned, such "permanent dispossession" of physical property came within definition of "direct physical loss of" property).

1    Cal. Sept. 2, 2020) (finding, where policy provided coverage for "direct physical loss of or

2    damage to" property, "[a]n insured cannot recover by attempting to artfully plead

3    temporary impairment to economically valuable use of property as physical loss or

4    damage"); W. Coast Hotel Mgmt., LLC v. Berkshire Hathaway Guard Ins. Cos., No. 20-

5    cv-05663-VAP-DFMx, 2020 WL 6440037, at *4 (C.D. Cal. Oct. 27, 2020) (rejecting

6    plaintiffs' contention "that the loss of use of their properties is sufficient to trigger

7    coverage" where policy provided coverage for "direct physical loss of or damage to"

8    property; finding "detrimental economic impact alone . . . is not compensable under a

9    property insurance contract" (internal quotation, citation, and emphasis omitted)).[6] [7]

10        Additionally, as TIC points out, the Policy expressly provides that "loss of use" is

11   not covered.  (See Deitzel Decl. Ex. A at 20 ("We will not pay for loss or damage caused

12   by or resulting from . . . loss of use.")); see also Mudpie, Inc. v. Travelers Cas. Ins. Co. of

13   Am., No. 20-CV-03213-JST, 2020 WL 5525171, at *6 (N.D. Cal. Sept. 14, 2020) (finding

14   policy provision stating insurer "'will not pay for loss or damage caused by or resulting

15   from . . . loss of use' . . . suggests that the 'direct physical loss of . . . property' clause was

16   not intended to encompass a loss where the property was rendered unusable without an

17   intervening physical force" (alterations in original) (citation omitted)).[8]

18   ────────────────────

19        [6] O'Brien's reliance on Thee Sombrero, Inc. v. Scottsdale Ins. Co., 28 Cal. App.
     5th 729 (2018), and Hendrickson v. Zurich Am. Ins. Co. of Ill., 72 Cal. App. 4th 1084
20   (1999), is unavailing, as the insurance policies at issue in those cases, unlike the Policy
     here, expressly covered "[l]oss of use of tangible property that is not physically injured."
21   See Thee Sombrero, Inc., 28 Cal. App. 5th at 733; Hendrickson, 72 Cal. App. 4th at
     1087.

22        [7] To the extent O'Brien alternatively argues "direct physical loss of or damage to"
23   property is ambiguous, such argument is unavailing, see Lockheed Martin Corp. v. Cont'l
     Ins. Co., 134 Cal. App. 4th 187, 197 (2005) (holding, "if a term in an insurance policy,"
24   when used in an "analogous" context, "has been judicially construed, it is not ambiguous"
     (internal quotation and citation omitted)), and to the extent O'Brien relies on cases
25   involving insurance policies similar to the Policy here at issue and holding loss of use
     alone suffices, the Court finds more persuasive the authorities cited herein finding to the
26   contrary.

27        [8] O'Brien's reliance on the definition of "[p]roperty damage" in the Policy's
     Businessowners Liability Coverage Form (see Deitzel Decl. Ex. A at 105), is misplaced,
28   as that definition applies solely to coverage for third-party liability claims (see id. at 119).

United States District Court
Northern District of California

1   Next, O'Brien argues that, in any event, it has plausibly alleged COVID-19 caused

2   "direct physical loss of or damage to" its business premises.  O'Brien has failed, however,

3   to add any allegations sufficient to show COVID-19 has caused a "distinct, demonstrable,

4   physical alteration" of the covered property or a "physical change in [its] condition."  See

5   MRI, 187 Cal. App. 4th at 779-80 (internal quotation, citation, and emphasis omitted).

6   Although O'Brien has added allegations that some individuals "who work at O'Brien's

7   office building" (see SAC ¶ 45-46), as well as "[t]wo of O'Brien's employees" (see id.

8   ¶ 49), "have tested positive for COVID-19" (see id. ¶¶ 45-46, 49), it has not, as TIC points

9   out, alleged COVID-19 was present in the covered premises.  Moreover, even assuming,

10  arguendo, O'Brien had alleged COVID-19 has been, at some point, physically present in

11  the covered property, "the presence of the virus itself, or of individuals infected with the

12  virus, at [O'Brien's] business premises or elsewhere [does] not constitute direct physical

13  loss of or damage to property."  See Pappy's Barber Shops, Inc. v. Farmers Grp., Inc.,

14  No. 20-CV-907-CAB-BLM, 2020 WL 5847570, at *1 (S.D. Cal. Oct. 1, 2020).

15  Indeed, as one source cited in the SAC notes, contaminated surfaces can be

16  disinfected and cleaned (see SAC ¶ 33 n.2 (citing newsletter from University of Arizona

17  titled, "People Unite Against the Threat of COVID-19," dated March 30, 2020)); see also

18  People Unite Against the Threat of COVID-19, Univ. of Ariz. (Mar. 30, 2020),

19  https://acis.cals.arizona.edu/community-ipm/home-and-school-ipm-newsletters/ipm-

20  newsletter-view/ipm-newsletters/2020/03/30/people-unite-against-the-threat-of-covid-19,

21  thereby demonstrating COVID-19 does not cause "physical alteration" or "physical

22  change in the condition" of property, see MRI, 187 Cal. App. 4th at 779-80 (internal

23  quotation, citation, and emphasis omitted); see also Uncork & Create LLC v. Cincinnati

24  Ins. Co., No. 20-cv-00401, 2020 U.S. Dist. LEXIS 204152, *13 (S.D.W. Va. Nov. 2, 2020)

25  (finding, "even actual presence of the virus would not be sufficient to trigger coverage for

26  physical damage or physical loss to the property"; noting, "[b]ecause routine cleaning . . .

27  eliminates the virus on surfaces, there would be nothing for an insurer to cover"); Mama

28  Jo's, Inc. v. Sparta Ins. Co., No. 17-cv-23362-KMM, 2018 U.S. Dist. LEXIS 201852, at *3,

1   *21-22, *24-25 (S.D. Fla. June 11, 2018) (holding presence of construction debris in

2   restaurant did not constitute "direct physical loss of or damage to" property; finding, "[t]he

3   fact that the restaurant needed to be cleaned more frequently does not mean Plaintiff

4   suffered a direct physical loss or damage").

5       Accordingly, the Court finds O'Brien has failed to plausibly allege coverage under

6   the Business Income and Extra Expense provisions.

7   **B.      Civil Authority Provision**

8       As set forth above, the Civil Authority provision provides coverage for losses

9   caused "by action of civil authority that prohibits access to" the insured property "due to

10  direct physical loss of or damage to property at locations, other than described premises."

11  (See Deitzel Decl. Ex. A at 63.)

12      In reliance thereon, O'Brien asserts "the Governor of California has issued

13  Executive Orders, including Executive Order N-33-20, that limit or reduce the normal

14  business operations of businesses in O'Brien's community," and "[t]he premise of [such]

15  shutdown orders is that the virus is physically present in proximity to [its] Covered

16  Property." (See Opp. at 22:3-5, 22:11-12.) [9]  As with the Business Income and Extra

17  Expense provisions, however, the Civil Authority provision requires "direct physical loss

18  of or damage to" property, and O'Brien, for the same reasons as set forth above with

19  respect to the covered premises, has failed to plausibly allege such loss or damage with

20  respect to any other property.

21      Further, it is apparent from the plain language of the cited civil authority orders that

22

23  _____

24      [9] In support of such asserted premise, O'Brien points out that the executive orders
    alleged here were issued in connection with a declared "State of Emergency" (see SAC
25  ¶ 54), which, under California law, "means the duly proclaimed existence of conditions of
    disaster or of extreme peril to the safety of persons and property," see Cal. Gov't Code
26  §§ 8558(b), 8625.  Even if one were to accept, arguendo, O'Brien's implicit contention
    that the cited statute could reasonably be interpreted to mean the Governor cannot
27  declare a State of Emergency predicated solely on extreme peril to the safety of persons,
    neither such statute nor an order issued pursuant thereto can alter the Policy's
28  requirement that the covered losses be caused by "direct physical loss of or damage to"
    property.  (See Deitzel Decl. Ex. A at 37-38, 63.)

United States District Court
Northern District of California

1   such directives were issued to stop the spread of COVID-19 and not as a result of any

2   physical loss of or damage to property.  (See Def.'s Req. for Judicial Notice ("RJN"), filed

3   Nov. 23, 2020, Ex. C (Governor's "Executive Order" dated March 19, 2020) at 3 ("This

4   Order is being issued to protect the public health of Californians. . . . [;] we want to bend

5   the curve, and disrupt the spread of the virus");[10] see also SAC ¶ 57 (alleging "executive

6   orders were issued due to the 'community spread' of COVID-19").)

7         Accordingly, the Court finds O'Brien has failed to plausibly allege coverage under

8   the Civil Authority provision.

9         Consequently, given such finding, as well as the findings previously discussed

10   above regarding the Business Income and Extra Expense provisions, the Court, although

11   sympathetic to O'Brien's difficult circumstances amidst the ongoing pandemic, finds the

12   SAC is subject to dismissal and, given O'Brien's failure to cure the previously identified

13   deficiencies in the FAC, such dismissal will be without further leave to amend.

**CONCLUSION**

14

15         For the reasons stated above, the Motion to Dismiss is hereby GRANTED, and the

16   instant action is hereby DISMISSED with prejudice.

17         **IT IS SO ORDERED.**

18

19   Dated: January 12, 2021

20                                           MAXINE M. CHESNEY
                                        United States District Judge

21

22

23

24

25

26

27         [10] TIC's unopposed request that the Court take judicial notice of the above-
referenced Executive Order is hereby GRANTED.  See Fed. R. Evid. 201(b).

28